1 | Rebecca L Becker
2 | 345 Pier Ave. #18
Oceano, CA 93445
3 | 805-806-0036
Plaintiff
4 | LODGED
CLERK, U.S. DISTRICT COURT
5 |
6 | AUG - 4 2011
7 | CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8 |

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CV11 06429**

9 | REBECCA L BECKER, CHRISTOPHER CONWAY,
10 | ... R.,
... ... ... ... ... ... ... A.S.,
11 | ... BOBBY SORENSON, CAMERON A.,
A... ... ... ... C., PAUL BROWN,
12 | DONALD RICHARDS, ANNE RICHARDS, ...
TARINA M. BRUNKHORST, PAUL J. BRUNKHORST,
13 | ... ... ALINE GALLAGHER
EDWARD YATES, ANITA PALOMA ... ... ...
14 | HILTON PREWITT, JEANNIE HENSLEY, MICHELE JAMES-RUSH, C...
15 |
16 | OTHER PARENTS SIMILARLY SITUATED,              **COMPLAINT**

17 |              Plaintiffs,               (CLASS ACTION ALLEGED)
vs--                                (JURY TRIAL DEMANDED)
18 |
19 | THERESA PEMBERTON, MARK HAAS, KELLY RIDDLE
SUSAN FULLER, MARY ANN FOSTER, DEBORAH WHITE,
20 | SHERILYNN HELBERG, KEVIN EDMONDS, CYNTHIA HUNT,
SAN LUIS OBISPO DEPT OF SOCIAL SERVICES, MADERA COUNTY DEPT
21 | OF SOCIAL SERVICES, SAN BERNARDINO COUNTY DEPT OF SOCIAL SERVICES,
COUNTY OF BERNALILLO DEPT OF SOCIAL SERVICES, ROCHELLE C. MILLER,
22 | ROXANNA ELMORE, LISA WILLIS, PETER SPAGNOLA, LISA WILLIAMS, ANGIE
VASTA, NATASHA RAJA. MONICA MONTURY, LINDA GENDRON, DAVID PLATT,
23 | DESILYN TRAHAN, TERRY NASH, RONALD MORGAN,
GINGER GARRETT, RENE BRAVO, MICHELLE AURAN,
24 | FLORA SANCHEZ, PAMELA METCALF, RONALD MORGAN,
CHRISTOPHE LE RENARD, HOWARD KUSUMOTO, ELIZABETH RAMIREZ,
25 | CHRISTINA TREZA-HORN, MATTHEW THOMPSON, JESSICA GILBERT
BARBARA EDMONDSON, PATRICK CONSIDINE, MICHELLE CAVIN,
26 | LUIS OCHOA, LANCE HILLSINGER, MELISSA WILSON, CLAUDIA GERARD,
27 | HOLLY PRIETO, STACEY WILLIS, DORI IUNCKER, JANIE LEAL, NICK CHA,
28 |

JANE ROES 1-10 AND JOHN DOES 1-10,
              Defendants.

_Original_

1

# TABLE OF CONTENTS

**Page**

INTRODUCTION....................................................................................................................6

JURISDICTION AND VENUE...........................................................................................12

THE PLAINTIFFS...............................................................................................................13

THE DEFENDANTS...........................................................................................................15

ORGANIZATIONAL STRUCTURE AND RESPONSIBILITIES OF DEFENDANTS.........18

I.   ALLEGATIONS REGARDING DEFENDANTS' POLICIES, CUSTOMS AND
     OMISSIONS.... ...........................................................................................................20

A.  Defendants Fail to Inform Foster Parents and Other
    Caregivers of Essential Information Necessary for
    Stable and Successful Placements ...............................................................................20

1.  Federal and State Laws Require Caseworkers to
    Provide Foster Parents Specific Information
    About a Child's Health and Behavioral
    Background Before Placing the Child..........................................................................20

2.  Defendants' Policies, Customs and Omissions
    Violate Federal and State Law Regarding the
    Provision of Information to Foster Parents .................................................................23

3.  Plaintiffs Have Been Injured as a Result of
    Defendants' Failure to Provide Required
    Information....................................................................................................................24

4.  Plaintiffs and Others Will
    Continue to Suffer Harm as a Result of
    Defendants' Policies, Customs and Omissions ..........................................................26

B.  Defendants Fail to Provide Foster Children with
    Necessary Medical and Mental Health Treatment to
    Which They Are Entitled ............................................................................................27

1.  Federal and State Laws Require Defendants to
    Provide Timely Medical and Mental Health
    Services to Meet the Needs of Children in Their
    Custody.........................................................................................................................27

2.  Defendants' Policies, Customs and Omissions
    Cause Defendants Regularly and Routinely to
    Fail to Provide Required Screenings and
    Treatment to Which Foster Children in Their
    Custody Are Entitled .................................................................30

3.  Plaintiffs Have Been Injured as a Result of
    Defendants' Failure to Provide Necessary
    Medical and Mental Health Services to Which
    They Are Entitled ....................................................................33

4.  It Is Likely that Plaintiffs and Others Will
    Continue to Suffer Harm as a Result of
    Defendants' Policies, Customs and Omissions ..............................33

C.  Defendants Fail to Ensure the Safety and Well Being of
    the Foster Children in Their Care and Custody..............................34

1.  Defendants Fail to Protect Foster Children by
    Failing to Ensure the Adequacy of Relative
    Caregivers...............................................................................34

    a.  Federal Law Requires That Relative
        Placements Be Subject to the Same
        Licensing Standards as Other Caregivers...............................34

    b.  California's Blanket Exemption of Relative
        Caregivers from Foster Home Licensing
        Standards Violates Federal Law...........................................35

    c.  Plaintiffs Have Been Injured as a Result
        of Defendants' Failure to Investigate and
        Monitor Relative Placements ..............................................37

    d.  It Is Likely That Plaintiffs and Others
        Will Continue to Suffer Harm as a Result
        of Defendants' Violation of Federal Law...............................38

2.  Defendants Fail to Protect Foster Children by
    Failing to Investigate Reports of Abuse and
    Neglect...................................................................................38

    a.  The Law Requires Defendants to
        Promptly and Thoroughly Investigate
        Suspected Abuse and Neglect of Foster
        Children ...............................................................................38

b.  Defendants' Policies, Customs, and
Omissions Do Not Comply with Laws
Mandating Investigations of Suspected
Abuse.................................................................40

c.  Plaintiffs Have Been Injured by
Defendants' Inadequate Investigation of
Suspected Abuse.................................................41

d.  Plaintiffs and Others
Will Continue to Suffer Harm as a Result
of Defendants' Policies, Customs and
Omissions .........................................................41

3.  Defendants Fail to Protect Foster Children When
They Divide Siblings .............................................42

a.  The Law Requires Defendants to
Initiate an Emergency Response Protocol
Governing a In Person Visit ...............................42

b.  Defendants' Policies, Customs and
Omissions Do Not Comply with Federal
And State Laws Governing In Persona Visits
And Removal of Children ...................................42

c.  Plaintiffs Have Been Injured by
Defendants' Failure to Investigate and
Document Pre-placement Preventive Efforts
And Meet Educational Requirements....................43

d.  It Is Likely That Plaintiffs and
Others Will Continue to Suffer Harm as a
Result of Defendants' Policies, Customs
And Omissions ...................................................44

II.  CLASS ACTION ALLEGATIONS...................................44

A.  Defendants Routinely Fail to Develop a Factual Case Plan for
Each Foster Child as Required Under California and
Federal Law.............................................................45

B.  Defendants Fail to Provide All Foster Children with
Ad Litem..................................................................48

C.  Defendants Fail to Ensure That Foster Children Receive
Early Intervention Services to Which They Are Entitled................51

CAUSES OF ACTION ...............................................55

PRAYER FOR RELIEF................................................................................70

JURY DEMAND................................ ................................ ................................ 71

## GLOSSARY OF TERMS

| | |
|---|---|
| ADHD | Attention Deficit/Hyperactivity Disorder |
| CAP | Children's Attorneys Project of Legal Aid Center of Southern California |
| CAPTA | Child Abuse Prevention and Treatment Act |
| SLO County DFS | SLO County Department of Family Services |
| Lightbourne | Will Lightbourne - Administrator of California Division of Children and Family Services |
| CPS | Child Protective Services |
| EPSDT | Early Periodic Screening, Diagnostic and Treatment |
| ICPC | Interstate Compact on the Placement of Children |
| IDEA | Individuals with Disabilities Education Act |
| IEP | Individualized Education Plan |
| Collins | Lee Collins - Director of SLO County Department of Family Services |
| NDA | National Deaf Academy |
| California DHHS | California Department of Health and Human Services |
| State DCFS | California Division of Children and Family Services |
| UNITY | Unified California Information Technology for Youth |
| Grant | Jim Grant – SLO County Administrator |
| Chapman | Ronald Chapman - Director of the California Department of Health and Human Services |

## INTRODUCTION

1. This action, consisting of individual claims for damages, declaratory, and injunctive relief, and class claims for declaratory and injunctive relief, is brought by twenty one children who are or have been in the legal custody of the State of California and/or San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico and/or, City of Albuquerque, County of Bernalillo, placed in foster care. Plaintiffs seek redress for the harms suffered while in Defendants' care and custody.

2. Plaintiff's children were removed from the care of their parents, and their custody was transferred to Defendants, for the explicit purpose of keeping them safe from further harm and ensuring their well being. But Defendants' child welfare system routinely fails in its legal obligations, duties and responsibilities to foster children. Although Defendants are and have long been aware of these failures, in many instances their proposed solutions have been ineffective, and in many cases they have taken no action at all. Defendants' policies, customs and omissions, as set forth in detail below, fail to comply with federal and state laws, depart substantially from professional judgment, standards, and/or practice, and reflect a deliberate indifference to the health and safety of the children Defendants are obligated to protect. As a result, Plaintiffs have sustained numerous injuries detailed below, including:

Abuse by a foster family that was so severe that the two very young Plaintiff children Defendants placed in that home had to transferred to other foster care facilities; Ignoring requests for authorization of urgently needed medical treatment until emergency surgery was required;

Multiple placement disruptions, including a seven-year-old child who was sent to at least *two* different foster care settings in less than a month and two children who have been sent to more than three different homes during their time in Defendants' custody.

3. Defendants operate a child welfare system that fails to comply with state and federal laws or professional standards. Although California law grants explicit responsibility and authority to the

state officials sued herein to develop and promulgate child welfare policy, these State Defendants have abdicated that responsibility in large respects. As a result, San Luis Obispo County Defendants have created many of their own policies. This mixture of state and county policies makes it virtually impossible to determine what policies apply and confounds the ability of even the most well-intentioned staff to determine what their responsibilities are to the children on their case load. Defendant Lee Collins, the director of the San Luis Obispo County agency responsible for administering child welfare services, characterized the absence of clearly constructed policies and procedures, coupled with inadequate training of caseworkers, as "a recipe for disaster."

4. California's foster care system is currently financed through a mix of federal, state, and county funds. The State provides funding to San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico's Bernalillo County, for operation of its foster care program, while San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico's, County of Bernalillo is responsible for providing funding for child protective services within their respective Counties. The State also receives millions of dollars of federal funds for its child welfare system and allocates a portion of these funds to San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico's Bernalillo County. Federal funds are the single greatest source of support for California's child welfare system, ranging each year from 53% to 55% of all state spending on child welfare.

5. To become eligible for federal funding, California and New Mexico agreed to administer its foster care program in accordance with federal statutes, regulations, and policies promulgated by the U.S. Department of Health and Human Services. The U.S. Department of Health and Human Services conducts periodic reviews to assess whether California and New Mexico are in compliance with those federal mandates. Federal Reviews were conducted in 2004 and 2009. Both of these reviews assessed the State's performance with regard to seven "child and family outcome categories" and seven "systemic factors" relating to key federal requirements. The 2004

review of California's foster care program found that California was not in substantial compliance with *any* of the seven child welfare outcomes designed to ensure children's "safety, permanency and well being." U.S. DEP'T OF HEALTH AND HUM. SERVS., Final Report, California Child And Family Services Review ("2004 Federal Review"), dated June 1, 2004. The outcomes included whether the State is protecting children from abuse and neglect; providing permanency and stability in children's living situations; and ensuring that children receive services to meet their physical and mental health needs.

6. The State's performance continued to fall far below national standards in the 2009 Federal Review. U.S. DEP'T OF HEALTH AND HUMAN SERVS, Final Report California Child and Family Services Review, dated January 2010 ("2009 Federal Review"). California was only in substantial compliance with one of the seven child welfare outcomes designed to ensure children's "safety, permanency and well being." In addition, California was *not* in substantial compliance with four of the seven "systemic factors." The State failed to meet federal standards in broad categories, including safety-related outcomes, staff and care provider training, case status review system, and the outcome for children's physical and mental health.

7. In 2008, the University of California at Berkley (UCB) analyzed San Luis Obispo County's foster care policies pursuant to a legislatively commissioned audit of child welfare services. The analysis determined the extent to which San Luis Obispo County policies incorporated state child welfare laws and regulations and the mandates of federal laws and regulations. The auditors concluded that San Luis Obispo County policies included barely a third (37%) of federal and state laws and regulations.

8. The 2008 legislative audit also assessed the extent to which San Luis Obispo County policies incorporated the recommendations of several prior reports of the County's deficiencies. The auditors found that San Luis Obispo County had adopted a mere 13% of the recommendations in those reports.

9. Since 2003, more than ten studies and reports have documented Defendants' failure to protect the health, safety, and well being of child abuse victims and children in foster care.

Defendants commissioned many of these reports. In addition, Defendants have conducted multiple case reviews that further document these failures. Though Defendants have had full knowledge of these studies, reports, audits, and case reviews, they have nonetheless failed to remedy the long-standing and substantial deficiencies identified in them. These studies put Defendants on notice that, among other problems:

(a) *Defendants fail to adequately train and supervise caseworkers.*

The 2008 legislative audit documented that few entry-level caseworkers have the rudimentary knowledge, skills, or training needed to perform their job of ensuring the health, safety, and well being of foster children in Defendants' custody. Few San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico County of Bernalillo caseworkers or their direct supervisors have a degree in social work or a license to practice social work in California or New Mexico.

At least 50 percent of the professional staff providing emergency response services, and at least 50 percent of the professional staff providing family maintenance services, shall possess a master's degree in social work. One hundred (100) percent of the supervisors of staff providing emergency response and family maintenance services shall possess a master's degree in social work. Many caseworkers are assigned caseloads before completing even the most basic training. High caseloads and inadequate training of San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico, County of Bernalillo child protective services providers and foster care workers contribute to the crisis within the system. Many workers' caseloads far exceed those established by national standards. Poorly trained and unsupervised caseworkers with high caseloads fail to abide by law, regulations, and professional standards, and are incapable of or fail to exercise professional judgment, resulting in serious injury to

children in foster care. Indeed, a recent assessment of California's performance in managing its foster care system revealed that caseworkers failed to prepare a federally and state-mandated case plan for approximately 47% of the foster children in its care within the state-mandated 45-day time window following removal from the home. Further, the 2009 Federal Review found that California failed to meet national standards for staff and provider training, noting that although California requires licensed social workers to complete continuing education requirements, not all caseworkers are licensed social workers. The State has no ongoing training or education requirements for caseworkers who are not licensed social workers.

*(b) Defendants fail to meet the needs of children under their care.*

Despite legally mandated obligations to these children, Defendants fail to identify and meet foster children's needs, causing them substantial harm. Defendants routinely fail to ensure that children in foster care are provided with the mental health, and early intervention services that they need and to which they are legally entitled. For example, in many instances, Defendants address the mental health needs of foster children solely by the prescribing of psychotropic drugs or ignoring the problem. Moreover, Defendants fail to monitor the children's health and well being after these drugs have been administered. Even after discovering abuse or neglect in the foster home, Defendants often fail to obtain needed services for the foster children who were victimized. This problem has been exacerbated by Defendants' failure to fulfill their legal obligation to provide prospective foster parents with critical information about the foster child's background and history of abuse, medical history and needs, family history, behaviors, and educational records.

*(c) Defendants fail to ensure that caseworkers conduct legally required visits with foster children.*

Caseworkers regularly fail to visit children in their placements and are therefore unaware of the quality of care the child is receiving, the harm befalling the child, the risk to which the child is exposed, and the lack of needed medical, mental health, education, and other services.

(d) *Defendants fail to take reasonable and legally mandated steps to protect children from harm.* Investigations of child abuse reports involving children in foster care routinely fail to comply with state law and professional standards. As a direct result, children who could and should have been protected suffer unnecessarily. County Defendants often turn a deaf ear to reports of abuse and neglect in foster care settings, allowing children to remain in dangerous homes that either should not have been licensed in the first place or should have had their licenses revoked. Even though state and federal law mandate appointment of a representative to look out for the interests of the child in all cases, the requirement to appoint a guardian *ad litem* is routinely left unfulfilled. Children in foster care thus frequently have no voice in court proceedings where decisions are made that affect their basic safety, their temporary and permanent placements, and their general well being.

10. As alleged herein, Defendants are further victimizing foster children rather than discharging their duty to provide for their safety, care, and well being. Because of their pervasive, long-standing, and well-documented deficiencies in providing suitable out-of-home placements, mental health services and monitoring, and other basic needs, Defendants have harmed and continue to harm Plaintiff children physically, emotionally, and psychologically.

Defendants' policies, customs and omissions described in this Complaint threaten the ability of foster children to grow, develop, and live safe and healthy childhoods. Plaintiffs have been harmed by Defendants' policies, customs, omissions and failures to fulfill their legal obligations to foster children, and without court action, they will continue to suffer injury as a result of

Defendants' unconstitutional deprivations and statutory violations. Many other children entrusted to the care and protection of Defendants will also suffer unless Defendants' violations are redressed.

11. This action seeks compensatory and punitive damages for the past harms that Plaintiffs have suffered while in the custody of Defendants. This action also seeks declaratory and injunctive relief to stop continuing violations of Plaintiffs' legal rights and to prevent Defendants, through their policies, customs and omissions, from continuing to harm the very children whom Defendants have a responsibility to protect.

12. In addition, this action also seeks declaratory and injunctive relief on behalf of certain specified classes of children in the San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico, County of Bernalillo foster care system for whom Defendants have failed to fulfill mandatory obligations to (1) develop case plans with the requisite information within the requisite time period under California, New Mexico and federal law; (2) provide guardians *ad litem* as required under California, New Mexico and federal law; and (3) provide early intervention services as required under California, New Mexico and federal law.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) & (4), 1332. Plaintiffs' action for declaratory relief is authorized by 28 U.S.C. §§ 1343(a)(4), 2201, 2202 and by Fed. R. Civ. P. 57. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims in this case arise in this District.

**THE PLAINTIFFS**

15. At all times relevant herein, Plaintiffs and their children appearing by their next friends[1] were and continue to be residents of San Luis Obispo County, California.

16. Plaintif_             seven-year-old boy who has been in the legal custody of, and placed in foster care with, San Luis Obispo County Department of Family Services ("San Luis Obispo County DFS") and/or California Division of Children and Family Services ("State DCFS") since he was taken on January 14, 2011. ████ appears in this action by his mother, Rebecca L Becker, who is acting as his next friend. ████r entered foster care and less than a week later was being sexually abused.

17. B _        a four-year-old boy who has been in the legal custody of Joel Becker, despite knowledge of Joel Becker's conviction for molesting children and in fact is listed on Megan's Law page in Sacramento.

18. Plaintiff:            .i T..        ., ugm .nonth old twins, T. _. .., uge seven are siblings. They have been in the legal custody of, and placed in foster care with, San Luis Obispo County DFS since January 2011. Trevor, B████, B████gh and T██████e appear in this action by their mother, Rebecca L Becker. Upon removing T████r, B████gh and T██████e from their home, Defendants refused to place them with their mother's placement candidates, despite an obligation to place foster children with next of kin or family friends when safe and appropriate placements are available, despite the people being ready, willing, and able to provide them a safe

---

[1] Plaintiff's children and their next friends are proceeding under fictitious names and satisfy the requirements of Rule 10(a) of the Federal Rules of Civil Procedure. Plaintiffs are minors in government custody who are challenging governmental action. Revealing their true identities would cause them to disclose highly intimate information, including details of abuse and neglect. Disclosure of the next friends, many of whom are currently caring for the children, would result in identification of the Plaintiffs. In addition, the use of next friends should be permitted in this case, as plaintiffs and their next friends satisfy the requirements of Rule 17(c) of the Federal Rules of Civil Procedure and the criteria set forth in *Whitmore v. Ark.*, 495 U.S. 149, 163-64 (1989).The next friends are all either family members or current or former foster parents. These individuals have the intention to act in the children's best interest.

and appropriate placement. ⌐ ⌐ ┄ ┄ ⌐ ⌐ ⌐ were healthy infants when taken from their mother, but after several days were taken to a doctor who made unknown diagnoses and ultimately ⌐ ⌐igh was taken to a doctor who admitted here to Cottage Hospital for major surgery, without notifying the mother. At the hospital, ⌐ ⌐igh was found to be suffering from pyloric stenosis and taken into surgery the next day. This is after being in Defendant's care for over a month. ~~Trevor, Torrance~~ and ~~Bayleigh~~ have suffered and continue to suffer injury as a result of Defendants' policies, customs and omissions.

19. Plaintiffs ~~Torrance~~ and ~~Bayleigh~~ are eight month-old twins who have been in the legal custody of, and placed in foster care with, San Luis Obispo County DFS since January 2011. ~~Torrance and Bayleigh~~ appear in this action by their mother, Rebecca Becker, and is acting as their next friend. Defendants at first repeatedly refused to place the children, with any alternative placement suggestions offered by their mother. Mother gave several names of persons who would qualify and are ready, willing, and able to provide a safe and appropriate placement for them. Instead, Defendants shipped ~~Trevor~~ from one Foster Parent to another after he suffered some sort sexual abuse. ~~Trevor~~ was in fact set to go to a counseling appointment that was set by his mother. To date the Defendants have failed and refused to set any counseling appointments for ~~Trevor~~ who was sexually abused while in Defendant's custody.

20. Defendants have actively impeded Plaintiff, Rebecca L Becker from obtaining urgently needed medical treatment for ~~Torrance~~ and ~~Bayleigh~~, including neglecting to return calls and failing to provide authorization for at least three necessary procedures. Left untreated, these conditions became so severe that doctors determined they could proceed with the procedures on an emergency basis without Defendants' authorization. As a result of Defendants' failure to provide medical treatment when it was urgently needed ~~Torrance~~ has ongoing complications. ~~Bayleigh~~ has had to undergo emergency surgery to alleviate her vomiting after eating. This surgery was delayed because of Defendants' failure to provide her with necessary and timely

medical care. Based on information and belief this is one of the alleged reasons (projectile vomiting) for removal, when in fact if they had allowed Becker to fulfill her doctor visits scheduled it would have been diagnosed sooner.

21. Some Plaintiffs appears as a next friend, and each next friend is a biological parent sufficiently familiar with the facts and circumstances surrounding the child's situation to represent the child's best interests in this litigation fairly and adequately.

**THE DEFENDANTS**

22. Defendant Will Lightbourne ("Lightbourne") has been the Director of the California Department of Health and Human Services ("California DHHS") since April 29, 2011 and is sued in his official and individual capacities.

23. As Director of California DHHS, Defendant Lightbourne is responsible for carrying out the administration of the California Division of Children and Family Services ("State DCFS"), which has responsibility for ensuring the provision of child welfare services throughout the state. California Welfare Code § 10500 et seq.

24. Defendant Lightbourne is also responsible for appointing divisional directors, including the Administrator of State DCFS. California Welfare Code § 10550. California DHHS, through its Division of Health Care Financing and Policy, is also the single state agency responsible for administering California's Medi Cal program. California Welfare Code § 14000.

25. Defendant Lightbourne is responsible for administering federal funds and ensuring county compliance with all federal mandates of the Medicaid program. California Welfare Code § 10550 et seq.

26. Defendant Ronald Chapman ("Chapman") has been the Director of Public Health since May 25, 2011 and is sued in his official and individual capacities. He is responsible for the administration and oversight of all functions of State DCFS.

27. State DCFS has broad responsibilities to Plaintiffs and other foster children. Among its responsibilities, the Division must administer all federal funds provided to the State by the United States Department of Health and Human Services, as well as plan, coordinate, and monitor the delivery of child welfare services throughout the State.

28. State DCFS is required to promulgate regulations "establishing reasonable and uniform standards for child welfare services." Notably, federal law precludes State DCFS from "delegating to other than its own officials its authority for exercising administrative discretion in the administration or supervision of the plan including the issuance of policies, rules, and regulations on program matters." 45 C.F.R. §205.100(b)(2). Thus, State DCFS must evaluate all child welfare services provided throughout the State and take corrective action against any agency providing child welfare services which is not complying with any applicable laws, regulations or policies. Defendant Chapman, as Director of Director of Public Health, is also responsible for administering the Medicaid program with respect to children in the child welfare system.

29. Defendants Lightbourne and Chapman are referred to collectively as the "State Defendants."

30. Defendant San Luis Obispo County is a public entity established and maintained by the laws and Constitution of the State of California. San Luis Obispo County owns, operates, manages, directs, and controls San Luis Obispo County DFS and employs and/or is responsible for the other County Defendants in this action including, but not limited to, caseworkers, supervisors, foster home licensors, and administrators. San Luis Obispo County has created the San Luis Obispo County DFS Political Department to provide and administer child welfare services in the County.

31. Defendant Jim Grant ("Grant") has been the San Luis Obispo County Administrator since August 2009 and is sued in his official and individual capacities. He is responsible for managing

the County's budget and providing administrative oversight for all County departments, including San Luis Obispo County DFS.

32. Defendant Lee Collins ("Collins") has been the Director of San Luis Obispo County Social Services since in or about August 2000 and is sued in his official and individual capacities. He is the Executive Officer of San Luis Obispo County Social Services and is responsible for administering child welfare services in San Luis Obispo County and for ensuring the safety and well being of children in or at risk of entering the child welfare system.

33. Defendants San Luis Obispo County, Grant, and Collins are collectively referred to herein as the "County Defendants."

34. John Does and Jane Roes Defendants 1 through 10 are, and at all times relevant hereto were, caseworkers for San Luis Obispo County and San Luis Obispo County DFS responsible for overseeing the safety, placement, health care, education, and/or well being of Plaintiffs while in the custody of San Luis Obispo County DFS, and are sued in their official and individual capacities.

35. John Does and Jane Roes Defendants 1 through 10 are, and at all times relevant hereto were, supervisors for San Luis Obispo County and DFS directly responsible for the supervision of John Does and Jane Roes Defendants I through X, and are sued in their official and individual capacities.

36. The true names and capacities of Defendants named herein as John Does and Jane Roes 1 through 10 are presently unknown to Plaintiffs who therefore sue Defendants by fictitious names. When the true names and positions of these Does and Roes are discovered, Plaintiffs will seek leave to amend this complaint and substitute the true names of Defendants. Plaintiffs or their next friends are informed, believe, and therefore allege that Defendants so designated herein are responsible in some manner and legally accountable for the events, occurrences, and harms suffered by Plaintiffs as set forth in this action.

37. At all material times, each Defendant acted under the color of the laws of the State of California.

38. The acts and omissions of the San Luis Obispo County Defendants, caseworkers, supervisors, and other employees described herein were pursuant to the actual policies and customs of San Luis Obispo County.

**ORGANIZATIONAL STRUCTURE AND RESPONSIBILITIES OF DEFENDANTS**

39. State Defendants Lightbourne and Chapman are responsible for the statewide implementation and administration of federal child welfare programs including Titles IV-B and IV-E of the Social Security Act. *See* California Welfare Code § 10550 et seq.

40. State Defendants receive millions of dollars in federal funds to meet the needs of children in the child welfare system and are therefore required to comply with federal mandates, including those set forth in the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997: Titles IV-B and IV-E of the Social Security Act. 42 U.S.C. §§ 622 *et seq.*; 671 *et seq.* ("Adoption and Safe Families Act"), and the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. § 5101 *et seq*; 20 U.S.C. § 1430 *et seq*; Individuals With Disabilities Education Act ("IDEA").

41. Between 1996 and 2011 federal financial contribution to California's child welfare system increased from $31 million per year to over $60 million per year. Federal funds comprise over 50% of all State spending on child welfare.

42. State Defendants also are responsible for the management and day to-day operation of California's Children's Mental Health Services program, which includes services provided to children in San Luis Obispo County's foster care system. Children's Mental Health Services is the California program created to address the needs of children with significant emotional and behavioral challenges and their families.

43. Until October 2004, California operated a bifurcated child welfare system in which the

State's counties with populations of over 100,000 were responsible for providing child protective services, while the State bore responsibility for providing foster care services. Under this system, abused and/or neglected children removed from their parents or guardians were first placed in the legal and protective custody of San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico, County of Bernalillo DFS pending the juvenile court's findings and disposition of the case. Children not returned from protective custody were placed in the legal custody and foster care of State DCFS.

44. As of October 1991, as a result of California "realignment" of state-local financing of health, mental health, and social services programs, responsibility for foster care was transferred from State DCFS to San Luis Obispo and other Counties. The State retained responsibility for supervision and oversight of San Luis Obispo and other Counties' child protective services and foster care programs to ensure, among other things, compliance with federal and state laws, regulations, and standards. The transfer of foster care staff and services from the State to San Luis Obispo County was completed in October 1994.

45. San Luis Obispo County is responsible for providing funding in an amount set by the County for the provision of child protective services. State DCFS provides the funding to San Luis Obispo County for the operation of its foster care program. The legislative appropriation for foster care services and all federal funds for child welfare services go to State DCFS. State and County Defendants negotiate a contract—the Intrastate Interlocal Contract with the State of California for Operation of Child Welfare, Eligibility and Foster Care Licensing Programs—detailing the County's responsibilities and specifying how the funds will be allocated.

46. Children committed to the legal custody of State or County Defendants may be placed in one of several different types of out-of-home placements. These placements include, among others, foster family homes, treatment foster homes, and group homes.

47. State DCFS is required to establish and ensure the Counties' compliance with minimum standards for licensure of foster family homes, group homes, and other child care facilities in which foster children are placed. California Welfare Code § 4000. In carrying out this obligation, State DCFS is required to promulgate regulations establishing uniform standards for the licensing of foster family homes, group homes, and child care institutions. *Id.*; California Welfare Code § 4074.

48. San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico, County of Bernalillo DFS is responsible for licensing foster and group homes in which it places foster children in its custody and for ensuring that those homes meet state standards. California Welfare Code § 16000. This responsibility includes monitoring foster and group homes to ensure that they continue to meet licensing standards, removing foster children from homes where necessary, and providing support to those homes. California Welfare Code § 16115. Licenses must be renewed every year by taking continuing education classes at least 8 hours a year. Licensing is required in order to protect children from abuse or neglect and ensure that the foster parent can properly care for children. C.C.R.  California Code of Regulations, Title 22, Division 6.

**I. ALLEGATIONS REGARDING DEFENDANTS' POLICIES, CUSTOMS AND OMISSIONS**

**A. Defendants Fail to Inform Foster Parents and Other Caregivers of Essential Information Necessary for Stable and Successful Placements**

**1. Federal and State Laws Require Caseworkers to Provide Foster Parents Specific Information About a Child's Health and Behavioral Background Before Placing the Child**

49. When Defendants remove a child from a home and take him/her into protective custody, they assume an obligation to place him into a safe and appropriate living situation with foster parents or other caregivers to take care of him. *See, e.g.*, 42 U.S.C. § 671(a)(22).

50. To fulfill that obligation, federal law mandates, among other things, that "before a child in foster care under the responsibility of the State is placed with prospective foster parents, the prospective foster parents will be prepared adequately with the appropriate knowledge and skills to provide for the needs of the child, and that such preparation will be continued, as necessary, after the placement of the child." 42 U.S.C. § 671(a)(24).

51. The Federal Foster Care and Adoption Assistance Act also requires that within 60 days of removal from the home, caseworkers must develop a case plan for each foster child that includes the child's health and education records, known medical problems and prescribed medications, and other relevant related information. 42 U.S.C. §§ 671(a)(16), 675(1), 45 C.F.R. §1356.21(g)(2). This Act also expressly requires that the caseworker provide an updated copy of the child's record to the foster parent or provider *at the same time the caseworker places the child with that parent or provider*. 42 U.S.C. § 675(5)(D).

52. California law also requires County DFS and/or State DCFS to provide prospective foster parents with specific information about the child, including information about the child's family, medical, and behavioral history, *before* placing that child with the foster parents. Calif. Welfare and Intuitions Code 16010. The purpose of sharing such information is to identify and provide for the most appropriately matched foster home. 42 U.S.C. § 675(5)(D). State regulations further require that information about the child's situation and needs be continually shared by the child welfare agency and the foster care providers in a timely manner, thereby ensuring that the child's needs are continuously addressed with appropriate services, including respite for foster care providers.

53. State DCFS acknowledges these obligations. Its Substitute Care Manual expressly requires that its social workers inform a child's foster care providers about that child's known history, including the child's current and previous behavior and any "acting out" behavior. As required by law, the Manual requires the social workers to provide this information to the foster parents

*before* placing the child. The Manual cautions: "[C]are providers need as much information as possible . . . to decide if they are capable of caring for the child."

54. Both federal and state laws require caseworkers to provide this information before or during placement to ensure that the prospective foster parent, relative, or other caregiver has sufficient information to make an informed judgment about his ability to provide the child with safe and appropriate care and to ensure that the placement selected for the child will remain stable, thereby avoiding another move for a child already traumatized by his removal from home. Further, placing a child with severe psychological and/or behavioral problems in a home that is not equipped to handle him puts both the child and the foster family members at risk of harm.

55. Defendants acknowledged that once they place a child into a foster home, keeping his placement as stable as possible is crucial to that child's well being. California – DSS –Manuel – CWS 31-066. Conversely, removing a child from his foster home and sending him to yet another placement is a serious disruption in the child's life that can have devastating effects. Removal causes the child to lose any sense of stability he developed in the home and can prevent him from receiving vital medication, counseling, educational or therapeutic services. Moving a child repeatedly can prevent the child from developing attachments, cause severe emotional trauma, and exacerbate existing mental health and behavioral problems. It is therefore critical that Defendants' caseworkers fulfill the agency's obligation to provide the requisite information to the foster parents to ensure the success of each foster child's placement.

56. In addition, failure to disclose information about the child's health care needs and history can also result in delays in getting appropriate assessments and treatment. Foster parents unaware of the child's past providers, diagnoses, and treatments cannot provide crucial history information to the child's healthcare providers. It is therefore critical for the provision of necessary medical and mental health treatment that Defendants fulfill their information-gathering and sharing obligations.

## 2. Defendants' Policies, Customs and Omissions Violate Federal and State Law Regarding the Provision of Information to Foster Parents

57. Defendants' policies, customs and omissions result in their routine failure to provide the required information about foster children to foster parents.

58. The most recent data from the statewide Unified California Information Technology for Youth ("UNITY") information system indicates that only approximately 53% of children had case plans within 45 days of removal from the home. This data confirms that a specifically identified deficiency noted in the 2004 Federal Review continues to be a serious problem. Thus, Defendants are well aware of their routine failure to collect necessary information in the first place.

59. Even when State Defendants have collected highly relevant medical and mental health information about foster children, they routinely fail to share that information with County actors to whom the State Defendants have delegated such critical responsibilities in the foster care arena, making it impossible for caseworkers to pass the information on to foster parents. For example, because most children entering foster care are enrolled in Medicaid, information about their medical history is readily available in the State Defendants' Medicaid database. This is also the case with information maintained by State Defendants' Children's Mental Health Services program, which is responsible for providing mental health services to Plaintiffs and other children in San Luis Obispo County who are in need of mental health screenings, assessments, and treatment. On information and belief, State Defendants do not provide critical information within their possession and control to County Defendants to ensure that foster parents receive accurate and complete health histories of the foster children.

60. The failure of Defendants' caseworkers to fulfill the obligation to share required information about the children in their custody and care with foster parents is foreseeable.

Defendants employ many caseworkers who are not adequately educated or trained regarding how to collect the necessary and required information about foster children or what information they must share with prospective foster parents. A large majority of County Defendants' caseworkers do not have degrees in social work, even at the bachelor's level, and approximately one-third of the caseworkers have been at their jobs for less than one year. Compounding these caseworkers' lack of education and experience, upon information and belief, Defendants allow new caseworkers to proceed in the field for months before providing them with even the initial, basic training. Nor are caseworkers who fail to provide the requisite information to foster parents in violation of federal and state law held accountable through supervision.

**3. Plaintiffs Have Been Injured as a Result of Defendants' Failure to Provide Required Information**

61. Defendants' policies, customs and omissions regarding withholding critical and required information about children caused injury to children in Defendants' custody, including Plaintiffs, by causing frequent and avoidable movements from one failed placement to another, and by causing the disruption, delay and/or withholding of services needed by Plaintiffs. For example:

(a) Defendants had significant and extensive information about ███████'s history, including that ███████ had (1) been sexually abused while in Defendants care; (2) was informed by Plaintiff Rebecca Becker that ███████ had been set a counseling appointment; (3) received numerous diagnoses often conflicting mental health evaluations from a variety of mental health providers; (4) and the fact that Defendants have failed and refused to obtain ███████ any type of counseling for the recent sexual abuse. Defendants failed to provide this information to prospective foster parents.

Upon information and belief, San Luis Obispo County DFS did not provide many of these mental health providers with information about ███████ health history, previous providers,

assessments, and treatment. Defendants' failures also impaired the continuity and effectiveness of ~~Taylor~~'s mental health care. ~~Taylor~~ has suffered injuries to his health, safety and well being as a result of Defendants' policies, customs and omissions.

(b) On or about June 2011, Michele James-Rush had ~~CHILD JAMES-RUSH~~, illegally taken without probably cause and against the child and mother's wishes. Child James-Rush is in dire need of medical attention and none has been forthcoming. In July 2011, Defendants moved ~~Child~~ ~~James-Rush~~ to a treatment foster home. Upon information and belief, Defendants did not provide the foster parents with an accurate and complete description of ~~Child James-Rush's~~ mental and behavior health and other special needs prior to placing her in their home.

Defendants' failure to provide full and accurate information regarding ~~Child James-Rush's~~ suffered injury to her health, safety and well being as a result of Defendants' policies, customs and omissions.

(c) On July 20, 2011 Plaintiff's Tarina M. Brunkhorst, Paul J. Brunkhorst had ~~BABY~~ ~~BRUNKHORST~~, at the hospital above the objections of staff and a law enforcement officer.

62. As the direct and proximate result of Defendants' policies, customs and omissions regarding the failure to collect, and/or the withholding of, critical and required information, as alleged herein, Plaintiffs have endured repeated failed placements, lack of access to continuous and/or effective mental health care, abuse, and neglect, and have been forced to take numerous psychotropic drugs. As a result of these experiences, Plaintiffs have suffered bodily harm, substantial physical and emotional pain and suffering, humiliation, extreme and severe mental anguish, acute anxiety, emotional and physical distress, and fear and depression, all to their damage and detriment.

**4. It Is Likely that Plaintiffs and Others Will Continue to Suffer Harm as a Result of Defendants' Policies, Customs and Omissions**

63. Defendants' policies, customs and omissions regarding the collection and sharing of critical information about foster children make it likely that Plaintiffs and others will continue to suffer harm in Defendants' custody.

64. A recent federal audit of a sample of Defendants' data from 2007 and 2008 indicates that during these years, almost a quarter of the children who were in foster care for less than a year moved to three or more placements. Similarly, almost half of children who remained in foster care between one and two years moved to three or more placements. A 2009 UCB Performance Audit showed that almost one-third of children in foster care had been in multiple school placements since coming into care.

65. This data comes as no surprise to Defendants. Defendants have been on notice for years that children in their custody are frequently shuttled from one temporary placement to another. The 2004 federal performance review of California's child welfare system found that only 31% of foster children in San Luis Obispo County had stable placements. Many of the children who experienced multiple placements were under five years of age.

66. Defendants' policies, customs and omissions regarding their withholding of information from foster parents reflect a deliberate indifference to the health and safety of those children constitute a substantial departure from professional standards, and evidence a lack of professional judgment.

67. Unless Defendants change their policies and customs to ensure that foster parents receive the required information about foster children before accepting them into their care, Plaintiffs and other foster children face likely future injury from the failure of those placements, and from the disruption, delay, and/or withholding of services that results when Defendants fail to share critical information.

**B. Defendants Fail to Provide Foster Children with Necessary Medical and Mental Health Treatment to Which They Are Entitled**

**1. Federal and State Laws Require Defendants to Provide Timely Medical and Mental Health Services to Meet the Needs of Children in Their Custody**

68. The Fourteenth Amendment to the U.S. Constitution provides foster children in government custody with substantive due process rights to services necessary to prevent foster children from deteriorating or being harmed physically, developmentally, psychologically, or otherwise while in government custody, including adequate mental, dental, psychiatric, and psychological services and the right to receive care, treatment, and services determined and provided through the exercise of accepted, reasonable professional judgment.

69. Federal laws require Defendants to provide foster children with medical and dental care and mental health treatment when needed. Federal law grants foster children the right to services to protect their safety and health. 42 U.S.C. § 671(a)(22) . Similarly, state law requires that Defendants provide services to foster children to address their needs while in foster care. 22 CCR §50177(a)(1). Those services include, but are not limited to, medical, hospital, psychiatric, surgical or dental services, or any combination thereof. 22 CCR §50177(a)(1). It is State DCFS policy to "ensure that physical, developmental and mental health needs of custodial children are identified and diagnosed through the use of standardized, periodic screenings." State Child Welfare Policies and Procedures, California Division of Child and Family Services Policy Manual § 9.5, 22 CCR §50147.1; DHS Medi-Cal Eligibility Procedures Manual, Article 4V. It is also State DCFS policy to "identify and respond to the needs of children under the age of three with developmental delay(s)." *Id.* § 9.5.

70. Defendants provide medical services to foster children in their custody primarily, if not exclusively, through the Medicaid program. As broad as the overall Medicaid umbrella is

generally, the initiatives aimed at children are even more expansive. When Congress amended the Medicaid statute in 1989, it made the provision of Early Periodic Screening, Diagnosis, and Treatment services ("EPSDT") to Medicaid eligible children mandatory for participating states. 42 U.S.C. §§ 1396d(r), 1396d(a)(4)(B). When medically necessary, states are bound to make available to Medicaid eligible children all of the twenty-eight types of care and services included as part of the definition of "medical assistance" in the Medicaid Act, including "necessary health care, diagnostic services, treatment and other measures . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services[.]" 42 U.S.C. §§ 1396d(r)(5).

71. The breadth of Medicaid's EPDST requirements is underscored by the statute's definition of "medical services." Section 1396d(a)(13) defines as covered medical services any "diagnostic, screening, preventative, and rehabilitative services, including any medical or remedial services . . . for the *maximum reduction of physical or mental disability* and restoration of an individual to the *best possible functional level.*" 42 U.S.C. § 1396d(a)(13) (emphasis added). The Medicaid Act further requires that medical assistance "shall be furnished with *reasonable promptness* to all eligible individuals." 42 U.S.C. §1396a(a)(8) (emphasis added).

72. Federal laws also require that State DCFS provide methods to

(a) inform foster children or their caretakers about EPSDT programs,

(b) provide foster children on request with "screening (periodic comprehensive child health assessments); that is, regularly scheduled examinations and evaluations of the general physical and mental health, growth, development, and nutritional status," and

(c) provide foster children diagnostic and treatment services. 42 C.F.R. § 441.56(a)-(c).

73. State DCFS policy requires that children in the custody of a child welfare agency "will receive Healthy Kids (EPSDT) Screenings followed by referrals for diagnosis and treatment."

State Child Welfare Policies and Procedures, California Division of Child and Family Services, 22 CCR §50147.1; DHS Medi-Cal Eligibility Procedures Manual, Article 4V. Screenings must include, but are not limited to, comprehensive health and development/behavior history; developmental/behavioral assessment; and comprehensive unclothed physical exam. *Id.* State DCFS policy also determines the frequency of such screenings: children under 1 year are to receive 5 screenings; children from 1-2 years are to receive a total of 4; and the frequency lessens as children age. *Id.* § 50147. State DCFS policy requires County DFS to develop internal policies to comply with these requirements, to document referrals in a state database within five days of the referral, and to ensure that supervisors verify that screening exams take place on all children who enter foster care "within the removal episode of 24 hours or more," and that any "exams, diagnosis, treatments, and /or referrals" are documented by the caseworker. *Id.* § 50147.

74. It is County DFS policy to "assure" the safety of each child in its care and custody by providing a pre-placement health screening for initial placement or any placement movement" and "ensure[e] that foster children participate in California's EPSDT program." County DFS Medical Case Management Unit Policies and Procedures § 50147, Health & Safety Code § 123830 discussion draft, dated December 19, 2008. On information and belief, these policies and procedures are now in place.

County DFS also has undertaken the responsibility to "[e]nsure completion of Early Periodic Screening, Diagnostic and Treatment (EPSDT) examination and any required medical follow-up care within fourteen (14) days for *all* children who enter substitute care." *Id.* § 50147.

75. In addition to the required screenings and treatments, caseworkers are required to visit foster children at their placements on a monthly basis. 22 CCR §50147.1. Such visits provide opportunities for the caseworker to observe whether a child has unmet medical and mental health needs or is in need of additional screening and treatment.

**2. Defendants' Policies, Customs and Omissions Cause Defendants Regularly and Routinely to Fail to Provide Required Screenings and Treatment to Which Foster Children in Their Custody Are Entitled**

76. Defendants have a long history of failing to provide the periodic screenings required by law. A 2005 County Case Review found that San Luis Obispo County DFS fails to meet the health and mental health needs of a full 50% of the children in its care. The 2008 UCB Performance Audit found that only 46.2% of children with identified mental health needs received mental health screenings. The 2009 Federal Review found that caseworkers had made no concerted effort to address children's mental health needs in 36% of the cases sampled.

77. Even when Defendants do assess children to determine what services they need, Defendants routinely fail to provide them with the necessary services. The 2008 UCB Audit found that 60% of children in foster care had not received Medicaid services to which they were entitled. The study also found that, of the children referred for mental health services, 45.5%—nearly half—did not receive the recommended services. Further, Defendants do not ensure that children with mental health needs receive individualized treatment that addresses their particular needs. Instead, as detailed below, many children with serious mental health needs receive only medication to control their behavior, rather than therapeutic services to treat their underlying mental health issues.

78. In September 2008, the Children's Attorneys Project (CAP) of the Legal Aid Center of Southern California, which represents several hundred foster children in San Luis Obispo, San Bernardino County, Madera County, sent a letter to Defendants addressing the inadequate mental health services their clients were receiving, including that: medication is often the only mental health treatment foster children receive; children are sent from one psychiatric facility to another, typically with new diagnosis and treatment regimes at each facility, with no consultation between providers at the different facilities; and children who could be treated in outpatient facilities are

1   instead confined in hospital settings. The letter was signed by Silvia Argueta, the Executive

2   Director of the Legal Aid Fountain of Los Angeles, who also is the Speaker of the California

3   Assembly. The letter described these inadequacies as "both systemic and of such magnitude as to

4

5   actually put our clients at risk."

6   79. Defendants' policies and customs with respect to psychotropic drugs are a key aspect of their

7   failure to provide required screenings and treatment. Psychotropic medications, including

8   antidepressants, antipsychotics, mood stabilizers, and tranquilizers, are powerful drugs that affect

9   the central nervous system. Some of these medications can cause users to become addicted.

10   Many of these drugs carry potentially serious side effects, such as diabetes, obesity, and liver

11   failure, and have the potential to adversely affect children's brain chemistry later in life.

12

13   The FDA has not approved such drugs for the widespread uses for which they are being

14   prescribed to the foster children in Defendants' custody. Administering a combination of two or

15   more psychotropic drugs can cause adverse reactions that endanger the patient's health. Little to

16   no data exists to support the prescribing of multiple psychotropic medications in the pediatric

17

18   population.

19   80. Rather than provide mental health services with necessary psychiatric treatment, such as

20   individual therapy, group counseling, or other types of care that meet their mental health needs,

21   Defendants have elected to respond to many foster children's issues by allowing widespread

22   administration of powerful psychotropic medications, often in combination.

23

24   Defendants' policies, customs, and omissions permit the routine administration of these drugs to

25   subdue a child's misbehavior and make the child easier to control, without regard to the side

26   effects and potential dangers of these medications and whether the drugs are medically

27   necessary.

28

Defendants fail to ensure that psychiatrists who prescribe psychotropic drugs comply with

professional standards for doing so, including ensuring that such psychiatrists have a

specialization in child and adolescent psychiatry and have received training in the use of these medications in the child's age group. Further, Defendants fail to ensure psychiatrists are provided with child-specific information, including the child's health history, physical exam, psychosocial assessment, and mental health, co-morbid conditions, family history, and school records, required to conduct a thorough examination in accordance with professional standards, before prescribing psychotropic medications. Defendants have failed to control and monitor the administration of these drugs to foster children, jeopardizing their health and safety.

81. Once a child begins taking a psychotropic medication, it is critical that the child receive proper monitoring to ensure that the drug is having its intended effect and is not causing harm. Such monitoring requires sufficient time to assess clinical response and side effects. Professional standards therefore require that the doctor monitor, among other things, the child's height, weight, blood pressure, blood test results, and other laboratory findings and make any adjustments to the dosage or type of medication that may become necessary. Psychosocial interventions, including psychotherapy, are frequently required along with the medication. Defendants fail to ensure that the necessary monitoring takes place or that other psychosocial intervention are provided to foster children, including Plaintiffs.

82. As a direct and foreseeable result of Defendants' policies, customs and omissions, foster children who are administered psychotropic medication do not receive proper monitoring, including psychotherapy, to ensure that the drug is having its intended effect and is not causing harm. This problem is exacerbated when foster children change placements, because in those instances, the children are often forced to change health care providers, including psychiatrists. As a result of Defendants' policies, customs and omissions, Defendants often fail to transmit a child's assessments, diagnoses, medication history, and treatment records to the new treating physician. Defendants do not require a child's current and former mental health providers to consult on the treatment plan. As a direct and foreseeable result, children routinely receive new

1  and often conflicting diagnoses from their new doctors and may begin taking different or

2  additional medications, increasing the risk of harm to the child.

3  **3. Plaintiffs Have Been Injured as a Result of Defendants' Failure to Provide Necessary**

4  **Medical and Mental Health Services to Which They Are Entitled**

5

6  83. Plaintiffs have been injured by Defendants' policies, customs and omissions that result in

7  foster children not receiving the necessary medical and mental health services to which they are

8  entitled. For example:

9  Although ~~Dori Iunck~~ was noticeably throwing up when she entered Defendants' custody,

10  Defendants failed to assess her developmental and medical needs. In February 2011, ~~Dori Iunck's~~

11

12  current foster parent, Dori Iuncker, brought ~~her in~~ to her regular doctor visit to seek care for

13  among other things, her vomiting. The examining physician determined that ~~she~~ needed an

14  emergency operation and ~~she~~ was taken to Cottage Hospital wherein it was determined she

15

16  had pyloric stenosis a potentially life-threatening ailment, but Dori Iuncker lacked authority to

17  authorize the diagnostic procedure. Dori Iuncker immediately attempted to contact cws

18  caseworker and supervisor. Despite multiple calls about this emergency situation, however,

19  neither the caseworker nor the supervisor returned Dori Iuncker's calls. Ultimately, Dori Iuncker

20

21  was able to obtain consent from ~~her~~ biological mother.

22  **4. It Is Likely that Plaintiffs and Others Will Continue to Suffer Harm as a Result of**

23  **Defendants' Policies, Customs and Omissions**

24  84. Rather than address these grave problems, Defendants adhere to policies and customs that

25  ensure the problems will continue. Defendants are well aware that many children entering foster

26

27  care have serious mental health problems, yet Defendants fail to train their caseworkers to

28  recognize and address these problems. Defendants also fail to provide caseworkers with basic

information regarding available children's mental health services or how to access and advocate

for those services. As a direct and foreseeable result, caseworkers routinely fail to secure mental health services for children who need them.

85. Similarly, Defendants are well aware that many children entering foster care have serious developmental delays or disabilities resulting from abuse or neglect. Defendants fail, however, to train caseworkers on developmental milestones or to educate them on how to identify a child's developmental delay or disability.

86. Defendants' policies, customs and omissions regarding their failure to provide necessary medical and mental health services reflect a deliberate indifference to the health and safety of children in their custody, constitute a substantial departure from professional standards, and evidence a lack of professional judgment.

87. Unless Defendants change their policies and customs to ensure foster children are provided necessary medical and mental health services to which they are entitled, Plaintiffs and other foster children face likely future injury in Defendants' custody.

**C. Defendants Fail to Ensure the Safety and Well Being of the Foster Children in Their Care and Custody**

**1. Defendants Fail to Protect Foster Children by Failing to Ensure the Adequacy of Relative Caregivers**

**a. Federal Law Requires That Relative Placements Be Subject to the Same Licensing Standards as Other Caregivers**

88. The United States Congress has mandated that state authorities shall be responsible for establishing and maintaining standards for foster family homes that are reasonably in accordance with recommended national standards, including those that relate to admission policies, safety, sanitation, and protection of civil rights. 42 U.S.C. 671(a)(10). In 2008, Congress enacted the Fostering Connections to Success and Increasing Adoptions Act. This Act amended Section 471(a)(10) of the Social Security Act by mandating that relatives cannot be exempted from

licensing requirements except on a case-by-case basis, and only in relation to nonsafety standards, such as the minimum square footage for a foster home, for specific children in foster care. 42 U.S.C. 671(a)(10). The purpose of this requirement is to ensure relative placements conform to the same level of safety as placements with non-relative caregivers.

**b. California's Blanket Exemption of Relative Caregivers from Foster Home Licensing Standards Violates Federal Law**

89. On May 16, 1997, California enacted AB 1402--Olberg, Article 3, Section 25210) and work requirements (Section 25520 (b) provides a blanket exemption for relative caregivers from all safety and non-safety standards contained within Health and Safety Code Section 1596.792

90. Health and Safety Code Section 1596.792 completely exempts relative care givers from complying with the foster home standards of 22 CCR 102358 and exempts child welfare officials from having to ensure compliance with required licensing standards.

91. California has mandated that any person who violates any of the provisions of Article 3, Section 25210 is guilty of a misdemeanor. Health and Safety Code Section 1596.792 is therefore mandatory and binding on caseworkers, and any caseworker who fails to comply with the blanket exemption provided for relative caregivers could possibly be prosecuted under Article 3, Section 252100.

92. State participation in Titles IV-B and IV-E of the Social Security Act (the "Act") is voluntary. Despite the voluntary nature of state participation, acceptance of federal funding under the Act is contingent on adherence to the requirements set forth in the Act. By accepting federal funds under the Act, California has implicitly consented to the Act's requirements, including the requirements under 42 U.S.C. 671(a)(10) that relative caregivers must be subjected to the same standards as non-relative caregivers.

93. Defendants' policies, customs and omissions fail to fulfill their obligation to protect children placed in relative foster homes. The only "investigation" caseworkers are required to conduct of

a relative foster home is a criminal background check on the adults in the home and verification that the home has fire and pool safety equipment. 22 CCR 89007 et seq. Defendants do not require caseworkers to make any other inquiries to determine whether the relatives are able to provide appropriate care for the children, including, for example, whether the relatives have any training or experience in taking care of children; whether they are equipped to meet any special needs the children may have; whether they have adequate room in their homes to accommodate the children; or whether they satisfy any other criteria for foster parent licensing. In some instances, Defendants place children in relatives' homes without even completing a criminal background check and, in some cases, without even verifying the identities of the adults living in the home.

94. County Defendants require all placements other than relative placements to go through the DFS Placement Unit. With relative placements, however, Defendants' policy is to allow individual caseworkers to determine on their own whether the home is safe and appropriate for the child. Defendants therefore fail to provide any supervision over the approval of relative placements to ensure that they meet requisite standards.

95. Compounding this problem, Defendants fail to train caseworkers regarding how to determine whether a relative placement is acceptable. Caseworkers responsible for the placement of children in the homes of relatives are not familiar with, nor do they apply, foster home licensing standards to relative placement decisions.

96. When Defendants place a child in any foster home, California law and professional standards require a caseworker to visit him at least monthly to ensure that he is receiving adequate care. Welfare And Institutions Code Section 16501.1(k). Professional standards require that children with special needs, including health or behavioral problems, receive more frequent visits.

97. Defendants' failure to investigate relative placements results in their placing many foster children with relatives who are unable or unwilling to provide adequate care. As a direct and foreseeable result, many foster children suffer abuse and neglect in these placements. Because Defendants routinely fail to monitor the care children receive in relative placements, many foster children, including Plaintiffs, are left to suffer this abuse for long periods of time.

98. Defendants' policies, customs and omissions concerning the investigation, approval, and monitoring of relatives with whom they place foster children reflect a deliberate indifference to the health and safety of those children, constitute a substantial departure from professional standards, and evidence a lack of professional judgment.

**c. Plaintiffs Have Been Injured as a Result of Defendants' Failure to Investigate and Monitor Relative Placements**

99. Defendants' policy and practice of failing to conduct adequate investigations into the safety and appropriateness of relative foster placements or to monitor those placements has injured Plaintiffs. For example:

(a) When ~~Child James-Rush~~ was thirteen years old, Defendants placed her in the home of a foster care worker.

Upon information and belief, Defendants' caseworkers failed to conduct an adequate investigation of the home at any time before or after placing ~~Child James-Rush~~ in the home and failed to visit ~~Child James-Rush~~ to ensure that she was receiving proper care.

But for Defendants' failure to investigate and monitor the placement, Child James-Rush would not have been subjected to this abuse.

(b) Defendants placed ~~Baby Broadhurst~~ in a foster home without even checking out any alternative relative, kin or family friend of relatives, including with her grandparents and cousins, and over the objection of hospital staff and a sworn police officer Upon information and belief, Defendants' caseworkers failed to conduct adequate or any investigations into the suitability of

37

relatives to care for ~~Baby Brunkhorst~~ at any time before or after placing the infant in a home and

failed to visit ~~Baby Brunkhorst~~ regularly to ensure that she was receiving proper care.

100. As the direct and proximate result of Defendants' failure to conduct adequate investigations into the safety and appropriateness of relative foster placements or to monitor those placements, as alleged herein, Plaintiffs Tarina M. Brunkhorst, Paul J. Brunkhorst, and ~~Baby Brunkhorst~~ have been subjected to abuse and neglect resulting in bodily harm, substantial physical and emotional pain and suffering, humiliation, extreme and severe mental anguish, acute anxiety, emotional and physical distress, and fear and depression, all to their damage and detriment.

**d. It Is Likely That Plaintiffs and Others Will Continue to Suffer Harm as a Result of Defendants' Violation of Federal Law**

101. Defendants' failure to require that relative caregivers be subjected to the same foster home standards as non-relative caregivers has caused and is continuing to cause widespread harm throughout the foster care system and make it likely that Plaintiffs and others will continue to suffer harm in Defendants' custody.

102. Unless Defendants fulfill their obligation to implement and enforce applicable federal law, Plaintiffs and others face the risk of future injury, including future abuse, from being placed in inappropriate, unsafe and unmonitored relative caregiver placements.

**2. Defendants Fail to Protect Foster Children by Failing to Investigate Reports of Abuse and Neglect**

**a. The Law Requires Defendants to Promptly and Thoroughly Investigate Suspected Abuse and Neglect of Foster Children**

103. When Defendants remove a child from her home and cause her to live in a foster care placement, Defendants are obligated to ensure that the child is safe in the placement they have chosen for her. California law mandates that Defendants must immediately investigate any report of possible abuse or neglect involving a child under the age of six, who is at a high risk for

serious harm, or who has visible signs of physical abuse. California Welfare Regulations CHAPTER 31-100 .1.11. Defendants must evaluate all other reports within three days. *Id.* If during the evaluation the Defendants conclude that an investigation is warranted, they must initiate the investigation within three days from the end of the evaluation. *Id.*

104. When Defendants receive a report of abuse, they must conduct an evaluation. California Welfare Regulations CH31-110.1. Defendants must determine how the child is being affected by the situation and whether the child is currently safe, at risk of abuse or neglect, or threatened with harm. California Welfare Regulations CH31-115. In making these determinations, Defendants must consider a number of factors, including age, any exceptional needs of the child, the child's need for medical care, whether the child has sustained a serious injury for which there is no reasonable or credible explanation, and whether safety risks are created because of a caretaker's lack of knowledge, skill, or motivation relating to parenting. California Welfare Regulations CH31-205.

105. State law also mandates that Defendants follow a specific protocol in investigating suspected abuse. If the allegations suggest imminent harm, then the caseworker assigned to investigate must see the child immediately and must assess the safety of all children in the home. California Welfare Regulations CH31-205. In other cases, the caseworker must attempt a face-to-face meeting with the child and his family on the next business day and on each successive business day until a supervisor deems the matter resolved. California Welfare Regulations CH31-206.5. Further, the caseworker investigating the report of abuse must consider a multi-factored list of considerations, including the risk posed to children by others living in the home. California Welfare Regulations CH31-105.115. The manner in which the investigation was initiated and any information obtained must be documented in writing. California Welfare Regulations CH31-125.3. Upon completing an investigation, Defendants must file a report with the Central Registry detailing the facts of the alleged abuse or neglect and the ultimate

disposition of the investigation. California Welfare Regulations CH31-105.21. Defendants have thirty days to complete a Child Protective Services (CPS) investigation, make recommended investigative findings, and submit a complete file to the CPS Supervisor from the receipt of the report at the hotline. *Investigations Policies and Procedures* (dated 9/5/2008), Discussion Draft. In addition, San Luis Obispo County DFS policy requires caseworkers to contact the child who is the subject of the report of abuse, as well as the child's siblings.

**b. Defendants' Policies, Customs, and Omissions Do Not Comply with Laws Mandating Investigations of Suspected Abuse**

106. Despite these mandated procedures, Defendants regularly and routinely fail to conduct required investigations and evaluations of suspected or reported instances of abuse and neglect of children they have placed in foster care. When Defendants do investigate or evaluate such reports, caseworkers routinely fail to investigate the factors required by California Welfare Regulations CH31-125.222, including the requirement that they assess the risk posed to a child by others living in the home.

107. Defendants also fail to train their investigators in techniques for gathering and evaluating facts on which to determine whether a child has been a victim of abuse or neglect.

108. Similarly, Defendant supervisors fail to supervise caseworkers to ensure that they are conducting investigations in accordance with law, regulations, and policy.

109. The 2009 Federal Review concluded that following reports of neglect or abuse, the State of California fails to meet national standards for appropriately conducting ongoing risk assessments to assess safety-related concerns, including whether a child is likely to be in immediate or imminent danger of serious physical harm.

110. Defendants' failure to adequately investigate suspected abuse and neglect of the foster children in their custody reflects a deliberate indifference to the health and safety of those

children, constitutes a substantial departure from professional standards, and evidences a lack of professional judgment.

111. As a direct and foreseeable result of Defendants' failure to comply with the requisite procedures for evaluations and investigations, Defendants routinely fail in their duty to protect the children in their custody and care, and children suffer abuse and neglect at the hands of their caregivers.

**c. Plaintiffs Have Been Injured by Defendants' Inadequate Investigation of Suspected Abuse**

112. Defendants' policy and practice of failing to conduct adequate investigations and evaluations of suspected or reported instances of abuse and neglect of children they have placed in foster care has injured Plaintiffs. For example:

When ~~Trevor Y~~ was seven years old and living in a foster home, he wanted to run away to a friend's house to escape the abuse he suffered at the agencies chosen foster care facility. On information and belief, the reports were not investigated pursuant to the requisite procedures, and Defendants simply moved ~~Trevor Y in~~ another home without informing the foster parents of the prior abuse.

113. As the direct and proximate result of Defendants' failure to conduct adequate investigations of reports of abuse and neglect, as alleged herein, Plaintiffs have been subjected to abuse and neglect resulting in bodily harm, substantial physical and emotional pain and suffering, humiliation, extreme and severe mental anguish, acute anxiety, emotional and physical distress, and fear and depression, all to their damage and detriment.

**d. It Is Likely That Plaintiffs and Others Will Continue to Suffer Harm as a Result of Defendants' Policies, Customs and Omissions**

114. So long as Plaintiffs remain in the foster care system, Defendants' policies, customs and omissions regarding failure to investigate reports of abuse adequately, or at all, make it likely

that Plaintiffs will suffer harm in the future. As demonstrated above, foster children in San Luis Obispo County, including Plaintiffs, routinely experience multiple placements while they are in Defendants' custody. As a result, Plaintiffs and others are likely to be again placed in homes where they will suffer abuse.

115. Unless Defendants change their policies and customs to institute a proper protocol for investigating abuse and to train their caseworkers on how to do so, these policies, customs and omissions will continue to injure children, including Plaintiffs.

**3. Defendants Fail to Protect Foster Children When Preparing Reports and 300 Petitions that Contain Unverified Information**

**a. The Law Requires Defendants to Verify Allegations of All Reporting Parties and Agencies and to Test their Trust Worthiness and Not Just Arbitrarily and Capriciously**

116. Plaintiffs allege and complain that the non discloser of reporting parties is a violation of the US Constitution http://familyrightsassociation.com/sixth/crawford_v_washington.htm and the embellishment of said statements by the CWS case workers that leaves them no remedy to address said false and embellished statements.

**b. Defendants' Policies, Customs and Omissions Do Not Comply with Federal and State Laws Governing Evaluations and Placement**

117. Despite these statutory and constitutional requirements, on information and belief, Defendants regularly and routinely do not physically inspect state facilities at least annually and before placing foster children at such facilities. Further, on information and belief, Defendants also regularly and routinely fail to ensure that foster children in state placements receive visits at least every month, to submit reports regarding such visits, and to annually review the services provided to, and any treatment plans established for, foster children in state placements.

118. State participation in Titles IV-B and IV-E of the Social Security Act (the "Act") is voluntary. Despite the voluntary nature of state participation, acceptance of federal funding

under the Act is contingent on adherence to the requirements set forth in the Act. By accepting federal funds under the Act, California has implicitly consented to the Act's requirements, including the requirements under 42 U.S.C. 675(5)(a)(ii) that children placed in state custody be visited at least once a months by a caseworker.

119. As a direct and foreseeable result of Defendants' failure to comply with statutory requirements governing state placements, Defendants routinely fail in their duty to protect the children in their custody and care by placing them in dangerous and poorly supervised state placements that result in the abuse and neglect of foster children in Defendants' custody.

120. Defendants' policies, customs and omissions concerning state visitations and the inspection of state facilities reflect a deliberate indifference to the health and safety of children placed in state custody, constitute a departure from professional standards, and evidence a lack of professional judgment.

**c. Plaintiffs Have Been Injured by Defendants' Failure to Monitor Employees' vested with Investigating Preparing and Reporting Petitions For Removal of Children**

121. Defendants' policy and custom of failing to physically inspect and monitor state facilities and other placements in which foster children are placed has injured Plaintiff Michele James-Rush, and ~~Child James Rush~~, For example:

(a) ~~Child James Rush~~ has complained of no religious activities.

(b) Additionally ~~Child James Rush~~ has complained of no trauma treatment for her mental state.

(c) ~~Child James Rush~~ has never been produced at court as the alleged reporting party.

(d) Hearings have been needlessly continued beyond what would be a speedy trial.

(e) ~~Plaintiff James Rush~~ has been sexually assaulted and nothing but a transfer was done and the foster parents that allowed this are still watching children. Upon information and belief, ~~James Rush~~ notified Defendants of this report shortly thereafter and provided them with details. Additional

persons, including case worker Sheri Helberg, were also notified. Defendants nonetheless failed to investigate Trevor's complaint.

122. As the direct and proximate cause of Defendants' failure to physically inspect and monitor state facilities in which foster children are placed and ensure that they receive visits at every month as alleged herein, Plaintiffs ~~Chloe, James, Rush~~ and ~~Trevor~~ have been subjected to abuse and neglect resulting in bodily harm, substantial physical and emotional pain and suffering, humiliation, extreme and severe mental anguish, acute anxiety, emotional and physical distress, and fear and depression, all to their damage and detriment.

**d. It Is Likely That Plaintiffs and Others Will Continue to Suffer Harm as a Result of Defendants' Policies, Customs and Omissions**

123. Defendants' failure to physically inspect state facilities before and during the placement of foster children to such facilities, to ensure that foster children in state facilities receive visits every month, and to at least annually review the services provided to foster children placed in state facilities, has caused, and is continuing to cause, widespread harm throughout the foster care system and makes it likely that Plaintiffs ~~Chloe, James, Rush~~ and ~~Trevor Y~~ and others will continue to suffer harm in Defendants' custody.

124. Unless Defendants cease their failure to implement and enforce applicable law regarding state placement of foster children, it is likely that Plaintiffs ~~Chloe, James, Rush~~ and ~~Trevor Y~~ and others face future injury from the failure of Defendants to physically inspect and monitor treatment of foster children in state facilities.

**II. CLASS ACTION ALLEGATIONS**

125. Plaintiffs bring certain claims for injunctive and declaratory relief in this action on behalf of themselves and three distinct classes of foster children in the legal custody of San Luis Obispo County DFS pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

## A. Defendants Routinely Fail to Develop a Case Plan for Each Foster Child as Required Under California and Federal Law

126. The first class is as follows:

All children removed from their homes and placed in foster care in the legal custody of San Luis Obispo County for whom a case plan in compliance with federal and state requirements has not been prepared (the "Case Plan Class")

127. The Case Plan Class Representatives are ~~Doe Plaintiffs and Child Plaintiff, Delman~~ ~~Barton and others named in this document~~ On information and belief, the Case Plan Class Representatives are members of the class they seek to represent.

128. The Case Plan Class consists of numerous individuals, making joinder of all members impracticable. Furthermore, the Case Plan Class is fluid in that new members are regularly created. There are more than 316 children in foster care in San Luis Obispo County. Throughout the year, many more children enter care than are reflected in any single-day census. During 2004, for example, a total of 86,000 were removed from their homes and placed in foster care in the State of California. Nearly half of the children in San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico County of Bernalillo foster care are not provided with written case plans within 45 days of removal from the home.

129. There are material issues of law and fact common to the members of the Case Plan Class. The material questions of law and fact common to the Case Plan Class include:

(a) Whether Defendants developed a written case plan containing the requisite information for each class member within the statutorily required time limit;

(b) Whether Defendants have continuously and with intent put false information into case reports and 300 Petitions;

(c) Whether the failure to develop a written case plan for each class member is a denial of class members' rights under California and federal law;

45

(d) Whether class members are entitled to declaratory and injunctive relief for the rights they have been denied.

130. The claims of the Case Plan Class Representatives are typical of the claims of the Case Plan Class. The Case Plan Class Representatives will fairly and adequately represent and protect the interests of the Case Plan Class. Case Plan Class Representatives know of no conflict of interest among the Case Plan Class members. Each Case Plan Class Representative appears by a parents, and each parent is sufficiently familiar with the facts and circumstances surrounding the child's situation to fairly and adequately represent the child's interests in this litigation.

131. As noted above, when Defendants remove a child from his home and take him into protective custody, the Federal Foster Care and Adoption Assistance Act requires that caseworkers develop a case plan for each foster child that includes the child's health and education records, known medical problems and prescribed medications, and other relevant related information. 42 U.S.C. §§ 671(a)(16), 675(1). Federal regulations mandate that the case plan be developed within a reasonable period, to be established by the State, but in no event later than 60 days from the child's removal from the home. 45 C.F.R. §1356.21 (g)(2).

132. California law requires the inclusion of medical and educational information collected about each child in a written case plan within 45 days after the removal of that child from his home. California Welfare Regulations CH 31.101.1.5.

133. The development of a case plan is crucial in identifying each child's needs and ensuring that those needs are met. Federal and state laws require caseworkers to prepare case plans in order to ensure that each child receives safe and proper care by identifying barriers to the provision of a safe environment for the child, clarifying responsibilities of the involved persons to address any identified barriers, and defining overall goals for the case, including step-by-step proposed actions of all persons to reach the goal. Without a case plan, for example, there is an increased risk that a child's special behavioral, emotional, or medical needs will not be met.

134. Collection and preparation of case plans is also critical to ensure required information about foster children is recorded and passed on to every foster care provider. Without this information, prospective foster parents cannot make a considered judgment about their ability to provide adequate care for the child nor are they made aware of and able to ensure that the child receives all necessary care, treatment, and services. Children placed with foster care providers who have not received this information are more vulnerable to disruptions in their placements.

135. Defendants' policies, customs and omissions result in Defendants' routine failure to collect the required information about foster children and to incorporate the information into a written case plan.

136. The most recent statewide data from the UNITY system indicates that only approximately 53% of children had case plans within 45 days of removal from the home. This data confirms that what was an obvious deficiency noted four years earlier during the 2004 Federal Review continues to be a serious problem. Statewide Assessment at 88.

137. The failure of Defendants' caseworkers to fulfill the obligation to collect required information and develop a timely written case plan for the children in their custody and care is foreseeable. Defendants employ many caseworkers who are not adequately educated or trained on how to collect the necessary and required information regarding foster children and who fail to meet minimal education levels such as a degree in social work. Approximately one-third of the caseworkers have been at their jobs for less than one year. Compounding these caseworkers' lack of education and experience, upon information and belief, Defendants allow new caseworkers to proceed in the field for months before providing them with even the initial basic training. In addition, caseworkers who fail to develop written case plans are not held accountable for such failings through requisite supervision.

138. Defendants' policies, customs and omissions regarding the failure to collect critical and required information and develop it in a written case plan for each foster child causes injury to

Case Plan Class members in Defendants' custody, including by causing frequent and avoidable movements from one failed placement to another, and by causing a disruption, delay, and/or a withholding of services needed by Case Plan Class members.

139. As the direct and proximate result of Defendants' policies, customs and omissions regarding the failure to develop a written case plan as alleged herein, Case Plan Class members have endured repeated failed placements, delay, and/or withholding of needed services, lack of access to continuous and/or effective mental health care, abuse, and neglect, and have been forced to take and abruptly withdraw from numerous psychotropic drugs. On information and belief, written case plans were not prepared for Case Plan Class Members and the Case Plan Class Representatives as required by federal and California law.

140. Defendants' policies, customs and omissions regarding the collection and compilation of critical information about foster children make it likely that Case Plan Class members and others will continue to suffer harm, including failed placements, in Defendants' custody.

141. Defendants' policies, customs and omissions regarding the failure to develop a written case plan reflect a deliberate indifference to the health and safety of those children, constitute a substantial departure from professional standards, and evidence a lack of professional judgment.

142. Unless Defendants change their policies and customs to ensure that a written case plan is developed for each foster child, Case Plan Class members face likely future injury.

**B. Defendants Fail to Provide All Foster Children with Guardians *ad litem***

143. The second class is as follows:

All children removed from their homes and placed in foster care in the legal custody of San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico, County of Bernalillo who have not been assigned a guardian *ad litem* as required by federal and state law (the "Guardian *ad Litem* Class").

144. The Guardian *ad Litem* Class Representatives are ~~[redacted]~~ On information and belief, the Guardian *ad Litem* Class Representatives are members of the class they seek to represent.

145. The Guardian *ad Litem* Class consists of numerous individuals, making joinder of all members impracticable. Furthermore, the Guardian *ad Litem* Class is fluid in that new members are regularly created. There are more than 316 children in foster care in San Luis Obispo County. Throughout the year, many more children enter care than are reflected in any single-day census. During 2004, for example, a total of 371 children were removed from their homes and placed in foster care. Approximately two-thirds of children who are removed from their homes and are the subject of abuse and neglect proceedings in San Luis Obispo County are not represented by a guardian *ad litem*. Only 3.5% of children who are in foster care receive a guardian *ad litem* within the first year.

146. The material questions of law and fact common to the Guardian *ad Litem* Class include:

(a) Whether Defendants failed to timely appoint a guardian *ad litem* for class members;

(b) Whether the timely failure to appoint a guardian *ad litem* for class members is a denial of class members' rights under California and federal law; and (c) Whether class members are entitled to declaratory and injunctive relief for the rights they have been denied.

147. The claims of the Guardian *ad Litem* Class Representatives are typical of the claims of the Guardian *ad Litem* Class. The Guardian *ad Litem* Class Representatives will fairly and adequately protect the interests of the class they represent. Guardian *ad Litem* Class Representatives know of no conflict of interest among the class members. Each Guardian *ad*

*Litem* Class Representative appears by a next friend, and each next friend is sufficiently familiar with the facts and circumstances surrounding the child's situation to fairly and adequately represent the child's interests in this litigation.

148. Federal law requires that in *every* case involving an abused or neglected child that results in a judicial proceeding, the State must appoint a guardian *ad litem* to represent the child in such proceedings at the time of the first protective custody hearing. 42 U.S.C. § 5106a(b)(2)(A)(xiii). The purpose of this requirement is to ensure that there is an adult to advocate on behalf of the child whose only allegiance is to the child. His role is to obtain a firsthand understanding of the child's needs and to make recommendations to the court concerning the child's best interests. The guardian *ad litem* must be either an attorney or a court-appointed special advocate, and he must receive training appropriate to the role. *Id.*

149. Defendants regularly and routinely deny representation by guardians *ad litem* to children in foster care. Although the law requires Defendants to appoint a guardian *ad litem* for *every* child who is the subject of abuse and neglect proceedings, approximately two-thirds of such children in San Luis Obispo County are not represented by a guardian *ad litem* in those proceedings. Of the one-third who received some representation, the vast majority are without a guardian *ad litem* until they have been in foster care for a year or more and after many major decisions regarding their placements and other important issues have already been made.

150. In each case in which Defendants fail to provide a guardian *ad litem*, they deprive the court and other decision makers of the information needed to make important decisions affecting the child's health and safety. As a result, children are often placed in unsafe and/or inappropriate settings; left to suffer abuse and neglect in such placements; denied health care, mental health treatment, and early intervention and other special educational services; and/or administered inappropriate and dangerous medications. Many of these injuries would not occur if each foster

child received representation to protect his interests, and many injuries that do occur would have a greater chance of being remedied.

151. On information and belief, each of the Guardian *ad Litem* Class Representatives was denied representation by a guardian *ad litem*, in violation of federal and California law.

152. Defendants have known about the lack of representation for foster children in San Luis Obispo County, San Bernardino County, Madera County and the State of New Mexico County of Bernalillo for years and have failed to address it. Unless Defendants change their policies and customs and appoint a guardian *ad litem* for each child at the time his case begins, many more children will continue to lose protected rights and will suffer injuries that could have been prevented if they had been appointed guardians *ad litem* to represent their interests.

**C. Defendants Fail to Ensure That Foster Children Receive Early Intervention Services to Which They Are Entitled**

153. The third class is as follows:

All children under age three removed from their homes and placed in foster care in the legal custody of San Luis Obispo, San Bernardino County, Madera County and the State of New Mexico and/or, County of Bernalillo who were involved in substantiated cases of child abuse or neglect or who had a positive drug screen at birth and have not been referred to early intervention services as required by federal law (the "Early Intervention Class").

154. The Early Intervention Class Representative is Christine F. On information and belief, the Early Intervention Class Representative is a member of the Early Intervention class she seeks to represent.

155. The Early Intervention Class consists of numerous individuals, making joinder of all members impracticable. During the 2009 fiscal year, 1,197 children under the age of 3 were the subject of substantiated reports of abuse or neglect. Federal law and state and county policy

require that each of these children be referred to early intervention services. On information and belief, referrals were not made for a substantial number of these children. Furthermore, the Early Intervention Class is fluid in that new members are regularly created. There are over 361 children in foster care in San Luis Obispo County. Throughout the year, many more children enter care than is reflected in any single day census. During 2004, for example, a total of 4,548 were removed from their homes and placed in foster care. Many of these children qualify for mandatory referral to early intervention services.

156. The material questions of law and fact common to the Early Intervention Class include:

(a) Whether Defendants fail to refer class members who are involved in substantiated cases of child abuse or neglect or who have positive drug screenings at birth to early intervention services;

(b) Whether the failure to refer class members to early intervention services is a denial of class members' rights under California, New Mexico and federal law and the U.S. Constitution; and

(c) Whether class members are entitled to declaratory and injunctive relief for the rights they have been denied.

157. The claims of the Early Intervention Class Representative are typical of the claims of the Early Intervention Class. The Early Intervention Class Representative will fairly and adequately protect the interests of the class she represents. The Early Intervention Class Representative knows of no conflict of interest among the class members. The Early Intervention Class Representative appears by a next friend, and the next friend is sufficiently familiar with the facts and circumstances surrounding the child's situation to fairly and adequately represent the child's interests in this litigation.

158. Federal law mandates that California and New Mexico have in effect and enforce a state law, or have in effect and operate a statewide program regarding child abuse and neglect, that includes referring children under the age of three who are involved in substantiated cases of child

abuse or neglect or who have a positive drug screen at birth to early intervention services funded under federal law. 42 U.S.C. § 5106a(b)(2)(A)(xxi) (CAPTA); 20 U.S.C. § 1437(a)(6)(A) (Part C of Individuals With Disabilities Education Act).

159. State DCFS policy requires that all such children be referred to "early intervention services" within two working days of being identified as qualifying for referral. State Child Welfare Policies and Procedures, California Division of Child and Family Services Policy Manual § 0502.2.2, 0502.5.2; *see also id.* § 0207.5.2 (requiring that children in substantiated cases of abuse/neglect be referred to an "Early Intervention Program" for a developmental assessment and that the results of the referral be documented within five working days of receipt of the information), § 0207.6 (requiring, *inter alia*, that supervisors verify by case note that referrals take place and the results of the referrals).

160. On information and belief, Defendants regularly and routinely fail to refer abused/neglected children to early intervention services as required by law. In each case in which Defendants fail to refer a child to early intervention services, that child misses a critical window of opportunity to effectively address and correct any learning and developmental difficulties she is facing. As a result, children often suffer from delayed or stunted development relative to children who are referred to early intervention services. California's Bureau of Early Intervention Services website states that the human brain develops extremely quickly during the first three years of life. Intervention during this window is particularly important in lessening the impact of educational and developmental disabilities later in life and in helping abused and neglected children grow into independent and productive adults. When Defendants fail to refer Early Intervention Class Members to early intervention services, the result is a lasting negative impact on the child's future quality of life and ability to function in an independent manner. "In order for children to succeed in school, they need supportive environments that enhance social and cognitive development before they enter kindergarten." H.R. Rep. No. 108-77, at 123-124 (2003)

(referring to proposed Individuals with Disabilities Education Act ("IDEA") reauthorization and amendments as the Improving Education Results for Children with Disabilities Act of 2003).

"The early years of a child's development lay the groundwork for future years and are critical years for children with disabilities and their families." *Id.* "Research shows that early identification and intervention can have a significant positive impact on children with disabilities and, in many cases, may help prevent the need for more costly services once a child reaches school age." *Id.*

161. Injuries of the type described herein and sustained by the Early Intervention Class would not occur if foster children were referred to early intervention services as required by law.

162. On information and belief, the Early Intervention Class Representative was denied referral to early intervention services, in violation of federal and California law and policy.

163. On information and belief, Defendants have been on notice for years of their failure to refer children to early intervention services. Unless Defendants change their policies and customs and refer children to early intervention services as appropriate, many more children will suffer injuries from the denial of these crucial services.

164. The three proposed classes are not represented by experienced counsel and request this Court to assign them well qualified counsel, who will adequately represent the interests of the classes.

165. Members of the three classes have all suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. Defendants have acted and failed to act on grounds generally applicable to the Class Representatives and the classes and require court imposition of uniform relief to ensure compatible standards of conduct toward the classes, thereby making appropriate equitable relief to the classes as a whole within the meaning of Federal Rules of Civil Procedure 23(b)(1) and (b)(2).

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**(Fourteenth Amendment to the United States Constitution, Substantive Due Process: Duty to Protect) (42 U.S.C. § 1983) (Against All Defendants)**

165. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 170 of this Complaint.

166. Defendants' conduct as alleged herein deprived Plaintiffs of their clearly established and well-settled rights under the Fourteenth Amendment to the United States Constitution, including their right to be free from harm while involuntarily in government custody and their right to medical care, treatment, and services. Defendants' conduct includes the following acts and omissions:

(a) failure to adequately provide medical, dental, and mental health services, including but not limited to standardized periodic health screenings and treatments, medical services for maximum reduction of physical or mental disability, and monitoring of, administration, and use of psychotropic drugs by foster children;

(b) failure to inform caregivers of essential information;

(c) failure to conduct legally required visits with foster children;

(d) failure to adequately respond to reports of abuse;

(e) failure to have children represented by counsel;

(f) failure to follow protocol of their own manuals and State law;

(g) failure to ensure adequacy of relative caregiver placements; and

(h) failure to adequately inspect out of state facilities and monitor treatment and services provided to foster children placed in out of state facilities.

167. Each Defendant acted under color of state law as to the matters set forth herein.

168. Defendants' acts and omissions alleged herein reflect a lack of professional judgment and deliberate indifference in depriving Plaintiffs of their Constitutional rights.

169. Defendants' acts and omissions complained of herein constitute a policy, pattern, practice, custom, final policymaking act, and/or ratification of a subordinate's action that deprived Plaintiffs of particular Constitutional rights.

170. Further, Defendants have failed in their duties to properly hire, train, instruct, monitor, supervise, evaluate and investigate Defendants' caseworkers and supervisors. Defendants were deliberately indifferent to the obvious consequences of these failures, and these failures directly resulted in the deprivation of Plaintiffs' Constitutional rights.

171. Defendants' acts and omissions complained of herein have caused the violation of Plaintiffs' Constitutional rights and caused Plaintiffs to suffer damages, including significant physical and emotional harm, in an amount to be determined at trial. These damages are compensable pursuant to 42 U.S.C. § 1983.

172. Plaintiffs are entitled to injunctive relief against Defendants' conduct as described herein because they are suffering and will continue to suffer substantial and immediate irreparable injury from such conduct unless and until Defendants are restrained.

173. As described herein, Defendants' acts or omissions were in willful, malicious, wanton, reckless or callous disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**

**(Fourteenth Amendment to the United States Constitution, Substantive Due Process: State Created Danger) (42 U.S.C. § 1983) (Against All Defendants)**

174. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 179 of this Complaint.

175. Defendants' acts and omissions as alleged herein deprived Plaintiffs of their clearly established and well-settled rights to personal liberty under the Fourteenth Amendment to the United States Constitution. Defendants' conduct includes acting with deliberate indifference to known or obvious danger in removing Plaintiffs from their homes and placing them in the care of foster parents, including in the care of relative caregivers and out of state facilities and homes, who were unfit to care for them and posed an imminent risk of harm to Plaintiffs' safety.

176. Each Defendant acted under color of state law as to the matters set forth herein.

177. Defendants' acts and omissions complained of herein constitute a policy, pattern, practice, custom, final policymaking act, and/or ratification of a subordinate's action that deprived Plaintiffs of particular Constitutional rights.

178. Further, Defendants have failed in their duties to properly hire, train, instruct, monitor, supervise, evaluate and investigate Defendants' caseworkers and supervisors. Defendants were deliberately indifferent to the obvious consequences of these failures, and these failures directly resulted in the deprivation of Plaintiffs' Constitutional rights.

179. Defendants' acts and omissions complained of herein have caused the violation of Plaintiffs' Constitutional rights and caused Plaintiffs to suffer damages, including significant physical and emotional harm, in an amount to be determined at trial. These damages are compensable pursuant to 42 U.S.C. § 1983.

180. Plaintiffs are entitled to injunctive relief against Defendants' conduct as described herein because they are suffering and will continue to suffer substantial and immediate irreparable injury from such conduct unless and until Defendants are restrained.

181. As described herein, Defendants' acts or omissions were in willful, malicious, wanton, reckless or callous disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**

**(Federal Adoption Assistance Act and Child Welfare Act; Federal Child Abuse Prevention and Treatment and Adoption Reform) (42 U.S.C. § 1983) (Against All Defendants)**

182. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 187 of this Complaint.

183. Defendants' conduct as alleged herein violated Plaintiffs' statutory rights under the federal Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, 42 U.S.C. § 671 *et seq.*, and the regulations promulgated under the Act, 45 C.F.R. Parts 1355-1357, including but not limited to:

(a) the right of each Plaintiff to have his or her health and educational records reviewed, updated, and supplied to foster care providers with whom the child is placed before or at the time of placement, pursuant to 42 U.S.C. §§ 671(a)(16), 675(1), and 675(5)(D);

(b) the right of each Plaintiff to have Defendants place him or her with relative foster parents only if those foster parents satisfy Defendants' foster parent licensing standards, pursuant to 42 U.S.C. § 671(a)(10); and (c) the right of each Plaintiff who Defendants place in an out of state placement to visits from caseworkers at least every six months, pursuant to 42 U.S.C. § 675(5)(A)(ii).

184. Each Defendant acted under color of state law as to the matters set forth herein.

185. Defendants' acts and omissions complained of herein constitute a policy, pattern, practice, custom, final policymaking act, and/or ratification of a subordinate's action that deprived Plaintiffs of particular statutory rights.

186. Further, Defendants have failed in their duties to properly hire, train, instruct, monitor, supervise, evaluate and investigate Defendants' caseworkers and supervisors. Defendants were deliberately indifferent to the obvious consequences of these failures, and these failures directly resulted in the deprivation of Plaintiffs' statutory rights.

187. Defendants' acts and omissions complained of herein have caused the violation of Plaintiffs' statutory rights and caused Plaintiffs to suffer damages, including significant physical and emotional harm, in an amount to be determined at trial. These damages are compensable pursuant to 42 U.S.C. § 1983.

188. Plaintiffs are entitled to injunctive relief against Defendants' conduct as described herein because they are suffering and will continue to suffer substantial and immediate irreparable injury from such conduct unless and until Defendants are restrained.

189. As described herein, Defendants' acts or omissions were in willful, malicious, wanton, reckless or callous disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive and exemplary damages.

**FOURTH CAUSE OF ACTION**

**(Substantive Due Process under the California Constitution) (Against All Defendants)**

190. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 195 of this Complaint.

191. Defendants' conduct as alleged herein deprived Plaintiffs of their substantive due process rights conferred upon them by Article I, § 8(5) of the California Constitution, including their right to be free from harm while involuntarily in government custody and their right to medical treatment, services and care which are provided through the exercise of accepted, reasonable professional judgment. Defendants' conduct includes the following acts and omissions:

(a) failure to adequately provide medical, dental, and mental health services, including but not limited to standardized periodic health screenings and treatments, medical services for maximum reduction of physical or mental disability, and monitoring of use of psychotropic drugs by foster children;

(b) failure to inform caregivers of essential information;

(c) failure to conduct legally required visits with foster children;

198. At all times Defendants owed Plaintiffs the duty to act with due care in the execution and enforcement of their duties to Plaintiffs.

199. Defendants were negligent in performing their duties and failed, neglected, and/or refused to properly and fully discharge their responsibilities, including but not limited to engaging in the following acts or omissions:

(a) Failing to ensure that foster children receive necessary care and services for their mental and emotional health, and receive visits from a caseworker no less often than once per month, as required by California DSS Manuel § 31-320;

(b) Failing to initiate a child welfare investigation promptly upon receipt of a report of possible abuse or neglect of a child, as required by Child Welfare Services Manual, Division 31 § 31-206;

(c) Failing to ensure that Plaintiffs were free from physical and emotional abuse while in a foster home, as required by California Welfare and Institution Code 300-304.7;

(d) Failing to provide information regarding each Plaintiff's medical history and behavior with prospective foster parents before placing each Plaintiff with those parents, as required by California Family Code 8706;

(e) Failing to physically inspect, monitor treatment and care at, and interview children transferred to out of state facilities, as required by N.R.S. § 432.0177 and § 127.330; and

(f) Failing to inform caregivers of essential information as required by N.R.S. § 424.038, N.A.C. §§ 424.465, 424.810 and 424.805.

200. Additionally, Defendants breached their duties of due care by:

(a) Failing to adequately hire, investigate, train, supervise, and monitor their employees to ensure that those employees act at all times in the public interest and in conformance with the law;

(b) Failing to make, enforce, and at all times act in conformance with policies and procedures that are lawful and that protect individual rights, including Plaintiffs' rights; and

(c) Failing to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth herein.

201. Defendants' negligence proximately caused Plaintiffs to suffer damages, including significant physical and emotional harm, in an amount to be determined at trial. The harm Defendants caused through their negligence was reasonably foreseeable.

202. As described herein, Defendants' malicious and/or oppressive acts and omissions caused injury to Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages pursuant to CIVIL CODE SECTION 3294-3296 3294. (a).

**SIXTH CAUSE OF ACTION**

**(Violation of Supremacy Clause (Article 1 Declaration Of Rights Sec. 7.(a)) (Against State Defendants Chapman and Lightbourne)**

203. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 208 of this Complaint.

204. The United States Constitution gives Congress the power to enact the "supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, § 3, cl. 2.

205. Through the Fostering Connections to Success and Increasing Adoptions Act, as amended, Congress has mandated that relatives be exempted from licensing requirements for foster care placements only on a case-by-case basis for specific children in foster care and only in relation to non-safety standards. 42 U.S.C. § 671(a)(10).

206. In direct contravention of Congress's mandate, the State of California has enacted, and the State Defendants enforce, California-DSS-Manual-CCL § 89207 creates a blanket exemption from standards for foster family homes for all relative caregivers and is not restricted to exemptions on only a case-by-case basis as Congress requires. California-DSS-Manuel-CCL §

89207 also exempts relative caregivers from safety standards, notwithstanding the Congressional mandate that relative caregivers receive exemptions only from non-safety standards.

207. An actual justiciable controversy exists between Plaintiffs on the one hand and the State Defendants on the other. Plaintiffs contend that, pursuant to 42 U.S.C. § 671(a)(10) and the Supremacy Clause, the State Defendants may not enforce California-DSS-Manuel-CCL § 89207, and may not thereby authorize County Defendants to place Plaintiffs and other foster children with relative caregivers without ensuring that the relative caregivers either meet the same standards as other foster family homes or are entitled to an exemption from a non-safety standard on a case-by-case basis. State Defendants contend to the contrary.

208. The threat that this unconstitutional and preempted law will be enforced against the Plaintiffs and others is an irreparable harm that makes injunctive relief appropriate. In addition to the imminent enforcement of California-DSS-Manuel-CCL § 89207, its unconstitutionality itself reinforces the irreparable harm Plaintiffs and other foster children face.

209. Plaintiffs are entitled to injunctive relief against enforcement of the challenged Statute because they are suffering and will continue to suffer substantial and immediate irreparable injury from enforcement of the challenged provision of California-DSS-Manuel-CCL § 89207. Plaintiffs also seek a declaration that California-DSS-Manuel-CCL § 89207 is unconstitutional.

**SEVENTH CAUSE OF ACTION**

**(Violation of Supremacy Clause (Article 1 Declaration Of Rights Sec. 7.(a)) (Against State Defendants Willden and Comeaux)**

210. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 215 of this Complaint.

211. The United States Constitution gives Congress the power to enact the "supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, § 3,

cl. 2.

212. Through the Safe and Timely Interstate Placement of Foster Children Act of 2006, Congress has mandated that a caseworker visit each foster child placed outside the state in which the home of the child's parents is located no less frequently than once every six months. 42 U.S.C. § 675(5)(ii) (as amended by 109 P.L. 239).

213. In direct contravention of Congress's mandate, the State of California has enacted, and the State Defendants enforce, N.R.S. 432.0177. N.R.S. 432.0177(2) mandates only annual visits to foster children transferred to out of state facilities.

214. An actual justiciable controversy exists between Plaintiffs on the one hand and the State Defendants on the other. Plaintiffs contend that, pursuant to 42 U.S.C. § 675(5)(A)(ii) and the Supremacy Clause, the State Defendants may not enforce 432.0177(2), and may not thereby authorize County Defendants to place Plaintiffs and other foster children in out of state facilities without ensuring that they are visited by caseworkers at least every six months, as mandated by federal law. State Defendants contend to the contrary.

215. The threat that this unconstitutional and preempted law will be enforced against the Plaintiffs and others is an irreparable harm that makes injunctive relief appropriate. In addition to the imminent enforcement of California Family Code Section 7911.1, its unconstitutionality itself reinforces the irreparable harm Plaintiffs and other foster children face.

216. Plaintiffs are entitled to injunctive relief against enforcement of the challenged Statute because they are suffering and will continue to suffer substantial and immediate irreparable injury from enforcement of the challenged provision of California Family Code Section 7911.1. Plaintiffs also seek a declaration that California Family Code Section 7911.1 governing the frequency of visitations is unconstitutional.

**NINTH CAUSE OF ACTION**

**(Child Abuse Prevention and Treatment Act; Guardian *ad litem*) (42 U.S.C. § 1983)**

**(On Behalf of the Guardian *ad Litem* Class Representatives and Class Against Defendants)**

223. Guardian *ad Litem* Class Representatives reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 228 of this Complaint.

224. The conduct of Defendants as alleged herein violated Guardian *ad Litem* Class Representatives' and class members' federal statutory right under 42 U.S.C. § 5106a (b)(2)(A)(xiii) to representation from a guardian *ad litem* in all proceedings before the juvenile court.

225. Each Defendant acted under color of state law as to the matters set forth herein.

226. Defendants' acts and omissions complained of herein constitute a policy, pattern, practice, custom, final policymaking act, and/or ratification of a subordinate's action that deprived Guardian *ad Litem* Class Representatives and class members of particular statutory rights.

227. Further, Defendants have failed in their duties to properly hire, train, instruct, monitor, supervise, evaluate and investigate Defendants' caseworkers and supervisors. Defendants were deliberately indifferent to the obvious consequences of these failures, and these failures directly resulted in the deprivation of Guardian *ad Litem* Class Representatives' and class members' statutory rights.

228. Guardian *ad Litem* Representatives and class members are entitled to injunctive relief against Defendants' conduct as described herein because they are suffering and will continue to suffer substantial and immediate irreparable injury from such conduct unless and until Defendants are restrained.

**TENTH CAUSE OF ACTION**

**(Child Abuse Prevention and Treatment Act; Early Intervention Services) (42 U.S.C. § 1983) (On Behalf of the Early Intervention Class Representative and Class Against Defendants)**

229. The Early Intervention Class Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 234 of this Complaint.

230. The conduct of Defendants as alleged herein violated the Early Intervention Class Representative's and class members' federal statutory right under 42 U.S.C. § 5106a(b)(2)(A)(xxi) (CAPTA) and 20 U.S.C. § 1437(a)(6)(A) (IDEA) to early intervention services.

231. Each Defendant acted under color of state law as to the matters set forth herein.

232. Defendants' acts and omissions complained of herein constitute a policy, pattern, practice, custom, final policymaking act, and/or ratification of a subordinate's action that deprived the Early Intervention Class Representative and class members of particular statutory rights.

233. Further, Defendants have failed in their duties to properly hire, train, instruct, monitor, supervise, evaluate and investigate Defendants' caseworkers and supervisors. Defendants were deliberately indifferent to the obvious consequences of these failures, and these failures directly resulted in the deprivation of the Early Intervention Class Representative's and class members' statutory rights.

234. The Early Intervention Class Representative and class members are entitled to injunctive relief against Defendants' conduct as described herein because they are suffering and will continue to suffer substantial and immediate irreparable injury from such conduct unless and until Defendants are restrained.

**ELEVENTH CAUSE OF ACTION**

**(Fourteenth Amendment to the United States Constitution, Substantive Due Process: Duty to Protect) (42 U.S.C. § 1983) (On Behalf of the Early Intervention Class Representative and Class Against Defendants)**

235. The Early Intervention Class Representative realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 240 of this Complaint.

236. Defendants' conduct as alleged herein deprived the Early Intervention Class Representative and class members of their clearly established and well-settled rights under the Fourteenth Amendment to the United States Constitution, including their right to be free from harm while involuntarily in government custody and their right to minimal care, including medical care, treatment and services. Defendants' conduct includes the failure to provide early intervention services as required under federal and state law.

237. Each Defendant acted under color of state law as to the matters set forth herein.

238. Defendants' acts and omissions alleged herein reflect a lack of professional judgment and deliberate indifference in depriving the Early Intervention Class Representative and class members of their Constitutional rights.

239. Defendants' acts and omissions complained of herein constitute a policy, pattern, practice, custom, final policymaking act, and/or ratification of a subordinate's action that deprived the Early Intervention Class Representative and class members of particular Constitutional rights.

240. Further, Defendants have failed in their duties to properly hire, train, instruct, monitor, supervise, evaluate and investigate Defendants' caseworkers and supervisors. Defendants were deliberately indifferent to the obvious consequences of these failures, and these failures directly resulted in the deprivation of the Early Intervention Class Representative's and class members' Constitutional rights.

241. Defendants' acts and omissions complained of herein have caused the violation of the Early Intervention Class Representative's and class members' Constitutional rights. The Early Intervention Class Representatives and class members are entitled to injunctive relief against Defendants' conduct as described herein because they are suffering and will continue to suffer substantial and immediate irreparable injury from such conduct unless and until Defendants are restrained.

**TWELFTH CAUSE OF ACTION**

**(Substantive Due Process under the California Constitution) (On Behalf of the Early Intervention Class Representative and Class Against Defendants**

242. The Early Intervention Class Representative realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 247 of this Complaint.

243. Defendants' conduct as alleged herein deprived the Early Intervention Class Representative and class members of their substantive due process rights conferred upon them by Article I, § 1-7 of the California Constitution, including their right to be free from harm while involuntarily in government custody and their right to minimal care, including medical care, treatment and services; Defendants' conduct includes the failure to provide early intervention services as required under state law.

244. Defendants' acts and omissions alleged herein reflect a lack of professional judgment and deliberate indifference in depriving the Early Intervention Class Representative and class members of their Constitutional rights.

245. Defendants' acts and omissions complained of herein constitute a policy, pattern, practice, custom, final policymaking act, and/or ratification of a subordinate's action that deprived the Early Intervention Class Representative and class members of particular Constitutional rights.

246. Further, Defendants have failed in their duties to properly hire, train, instruct, monitor, supervise, evaluate and investigate Defendants' caseworkers and supervisors.

Defendants were deliberately indifferent to the obvious consequences of these failures, and these failures directly resulted in the deprivation of the Early Intervention Class Representative's and class members' Constitutional rights.

247. Defendants' acts and omissions complained of herein have caused the violation of the Early Intervention Class Representative's and class members' Constitutional rights. The Early Intervention Class Representative and class members are entitled to injunctive relief against Defendants' conduct as described herein because they are suffering and will continue to suffer substantial and immediate irreparable injury from such conduct unless and until Defendants are restrained.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severally, and for the Court to provide relief as follows:

1. Assert jurisdiction over this action;

2. Order that Plaintiffs may maintain Causes of Action Eight, Nine, Ten, Eleven, and Twelve as class actions pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure;

3. Compensatory damages for Causes of Action One through Five, in an amount over 5,000,000.000.00 to be proven at trial;

4. Punitive damages against the individual defendants under 42 U.S.C. § 1983 and California law in an amount to be proven at trial;

5. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C.§ 1983 and 1988 and as otherwise allowed by federal or California law;

6. Declare unconstitutional and unlawful Defendants' violations of Plaintiffs' and Class members' rights;

7. Preliminarily and permanently enjoin Defendants from subjecting Plaintiffs and Class Members to practices that violate their rights;

8. Costs of suit; and

9. Such further relief as the Court deems just, necessary, and proper to protect Plaintiffs from further harm by Defendants.

**JURY DEMAND**

Plaintiffs hereby demand trial by jury on any and all issues triable by a jury.

Dated: August 3, 2011

Rebecca L Becker

Tiffany Conway

Christopher Conway

Donald Richards

Faline Gallagher

Anne Richards

Hilton Prewitt

Edward Yates

Jeannie Hensley

Bobby Sorenson

Paul Brown

Tarina M Brunkhorst

Paul J Brunkhorst

Anita Paloma

Michele James-Rush

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☒) | DEFENDANTS |
|---|---|
| REBECCA L BECKER, TIFFANY CONWAY, CHRISTPHOR CONWAY, DONALD RICHARDS, ANNE RICHARDS, BOBBY SORENSON, PAUL BROWN, DONALD RICHARDS, ANNE RICHARDS, EDWARDS YATES, <br><br> TARINA BRUNKHORST, FALINE GALLAGHER, ANITA PALOMA, ET AL | THERESA PEMBERTON, MONICA MONTERY, LINDA GENDRON, SHERRI HELBERG, KEVIN EDMONDS, CYNTHIA HUNT, MARYANN FOSTER, SUSAN FULLER, SAN LUIS OBISPO DEPT OF SOC. SERVICES <br><br> KEVIN EDMONDS, TERRY NASH, PATRICK CONSIDINE, ET AL |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Rebecca L Becker          8058060036 <br> 345 Pier Ave, #18 <br> Oceano, CA 93445 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No          ☒ **MONEY DEMANDED IN COMPLAINT: $** Over $5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Constitution 1,4,5,6,7,8,9, 13 & 14 Amendments, Title 18 secs 241, 242, 245, 1001, 1203, Title 42 section 671(a)(15)(19), sec 14141 and sec 1983 et seq,

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☒ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV11  06429**

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒N    Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒No    :s
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| PLAINTIFFS SAN LUIS OBISPO COUNTY | PLAINTIFF CARL ZAGAR, SACRAMENTO COUNTY, CALIFORNIA PLAINTIFFS CHRISTOPHER CONWAY, EDWARD YATES SUFFOLK COUNTY, NEW YORK |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| DEFENDANTS SAN LUIS OBISPO | DEFENDANT TANGELA ALLISON, SACRAMENTO |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| SAN LUIS OBISPO | SACRAMENTO CALIFORNIA |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Declabene_    Date _8-4-11_

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |